PATRICK H. HEFFRON

*v.*

MAGGIE BROWN.

*Filed at Ottawa April 1, 1895.*

1. EVIDENCE—*as to value of services in absence of an agreement.* In assumpsit for services rendered, evidence of the value of such services is admissible, where there is nothing to show that there was any agreement to pay therefor a particular amount or at a particular rate.

2. SAME—*competency of witnesses to give opinions as to value of services.* Witnesses who testify, the one that she had been a housekeeper for four years and knew the value of a housekeeper's services, and the other that she has been eleven years in the employment business and acquainted with the wages of housekeepers during that time, are competent to state their opinions as to the value of services rendered as a housekeeper.

3. SAME—*presumption that services by member of family were gratuitous—how overcome.* The presumption that services rendered by one admitted into the family as a relative were gratuitous, may be overcome by proof, either of an express contract, or of a contract established by such facts and circumstances as show that both parties contemplated or intended pecuniary recompense other than that naturally arising out of the family relation.

4. SAME—*express contract to pay for services proved by circumstantial evidence.* An express contract to pay for services rendered by a member of a family may be proved, not only by direct evidence of an actual agreement and the express words used by the parties, but also by circumstantial evidence, and an implied contract may be proved by circumstances showing that the parties intended to contract, and the general course of dealing between them.

5. INSTRUCTIONS—*refusal no error if substance is already given.* Refusal of a requested instruction is not ground for reversal where its substance is sufficiently embodied in those given.

*Heffron v. Brown,* 54 Ill. App. 377, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL P. McCONNELL, Judge, presiding.

OSBORNE BROS. & BURGETT, and WILLIAM J. CANDLISH, for appellant :

Where services are voluntarily rendered or support furnished by those near of kin or by those sustaining near family relations, whether of blood kin or not, the law will imply no contract for compensation, and unless an express contract to pay is shown in such a case, no recovery can be had. *Hall* v. *Finch,* 29 Wis. 278, and cases cited; *Faloon* v. *McIntyre,* 118 Ill. 292, and cases cited; *Collar* v. *Patterson,* 137 id. 403 ; *Woolsey* v. *White,* 7 Ill. App. 277; *Fruitt* v. *Anderson,* 12 id. 421; *Cooper* v. *Cooper,* id. 478; *Meyer* v. *Temme,* 72 Ill. 574; *Mowbry* v. *Mowbry,* 64 id. 383 ; *Byers* v. *Thompson,* 66 id. 421.

This presumption extends even to a friend, a visitor or a stranger. *Scully* v. *Scully,* 28 Iowa, 548 ; *Smith* v. *Johnson,* 45 id. 308; *Dunlap* v. *Allen,* 90 Ill. 108; *Tyler* v. *Burrington,* 39 Wis. 376 ; *Pellage* v. *Pellage,* 32 id. 136 ; *Collar* v. *Patterson,* 137 Ill. 403.

The most liberal construction that can be placed upon the rule as laid down in these cases is, that there must be an express contract, or clear, direct and positive evidence that there was an expectation on the part of one to receive payment and on the other to make payment. *Cooper* v. *Cooper,* 12 Ill. App. 482 ; *Fruitt* v. *Anderson,* id. 421; *Scully* v. *Scully,* 28 Iowa, 548 ; *Williams* v. *Hutchinson,* 3 N. Y. 319 ; *Ayres* v. *Hull,* 5 Kan. 419 ; *Hall* v. *Finch,* 29 Wis. 281; *Hartman's Appeal,* 3 Grant, 271; *Duffy* v. *Duffy,* 44 Pa. St. 402 ; *Bash* v. *Bash,* 9 id. 260 ; *Wells* v. *Perkins,* 43 Wis. 160.

It must have been the intention of Heffron to assume a legal obligation capable of being enforced against him. *Hall* v. *Finch,* 29 Wis. 278 ; *Mountain* v. *Fisher,* 22 id. 93 ; *Swires* v. *Parsons,* 5 W. & S. 357; *Bash* v. *Bash,* 9 Pa. St. 260 ; *Lynn* v. *Lynn,* 29 id. 369 ; *Duffy* v. *Duffy,* 44 id. 402 ; *Lantz* v. *Frey,* 14 id. 201; *Defrance* v. *Austin,* 9 id. 309 ; *Scully* v. *Scully,* 28 Iowa, 548 ; *Coe* v. *Wager,* 42 Mich. 49 ;

*Williams* v. *Hutchinson*, 3 N. Y. 312; *Fitch* v. *Peckham*, 16 Vt. 150; *Wier* v. *Wier's Admr.* 3 B. Mon. 645.

L. M. ACKLEY, and GEORGE W. BRANDT, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an action of assumpsit, brought by appellee against appellant for services as housekeeper and attendant in his household for a period of about five years and six months from April, 1882, to November, 1887. Verdict and judgment were in favor of plaintiff below; the judgment has been affirmed by the Appellate Court, and the case is brought here by appeal from the latter court.

Prior to April, 1882, the family of appellant, who was a bachelor at that time, consisted of himself, his sister and his mother, the latter being in feeble health. In April, 1882, his sister died of the small pox, and he at once telegraphed to appellee, an adult woman, to come to Chicago, and take charge of his mother and the house. Appellee was a niece of his mother and his own cousin. She had worked for many years—from the time she was a little girl—in a family living in one of the suburban towns near Chicago, and had been in the habit of visiting her aunt and cousin at appellant's house about once in each month. She had never received her wages regularly while at work in the family employing her, but had allowed them to accumulate in their hands. She had $250.00 in money, saved from her previous earnings, when she went to live with appellant and his mother. She came to his house in response to his telegram and remained an inmate of his family during said period of five years and a half, leaving shortly after his marriage which occurred in the latter part of her stay there. When she came, appellant was living in a small cottage, but at the end of a month he moved into a three-story brick house, with dining-room and kitchen in the basement, and sleep-

ing rooms on the top floor.   During said period, appellee was housekeeper, and had charge of the household generally.   She did the marketing and cooking, and took care of the house, and acted as nurse and attendant for appellant's mother, who was sick with the asthma and rheumatism, and whose meals had to be carried to her. During the first three years there was a washer-woman to do the washing, and during the rest of the time a female servant was hired on account of the increasing illness of the mother.

There is evidence tending to show, that appellee was treated as a member of the family, and came and went as she pleased, and received presents of money at Christmas, and sometimes used her cousin's carriage to ride in, and contracted some bills which were paid by him or his mother, but she received no compensation for her services, the money paid her for presents amounting during the whole time to not more than $80.00.   It appears, that she paid for her clothes, except one or two garments which were given her, and for some music lessons taken by her, out of her own money.

*First*, it is insisted that the court erred in admitting the testimony of two witnesses as to the value of appellee's services as housekeeper.   We see no reason why the testimony was not properly admitted.   As there was nothing to show, that there was any agreement to pay appellee a particular amount, or at a particular rate, it was competent to show what her services were worth, if she was entitled to recover anything at all.   One of these witnesses swore, that she was a housekeeper and had been such for four years, and knew the value of a housekeeper's services.   The other swore, that she had been eleven years in the employment business in Chicago, and was acquainted with the wages of housekeepers during that time.   A sufficient foundation was laid to justify the expression of an opinion by each witness as to the value of the services rendered by appellee.

*Second,* objection is made to two instructions given for the plaintiff, and to the modification of two instructions asked by the defendant, and to the refusal of one instruction asked by the defendant. As to the latter, its substance is sufficiently embodied in the instructions given, and therefore no injury was done by its refusal. All the points urged against the instructions given and the instructions modified may be summed up in the one objection, that those instructions authorize the jury to find whether there was a contract, express or implied, to pay for appellee's services. It is claimed, that no recovery could be had by the plaintiff unless there was an express contract by the appellant to pay her for her services, and that, if there was no express contract, none could be implied from facts or circumstances.

Where services are rendered by one admitted into the family as a relative, the presumption of law is that such services are gratuitous, and that the parties do not contemplate the payment of wages therefor. This presumption, however, may be overcome by proof. The proof necessary to overcome the presumption may be either of an express contract, or of a contract established by such facts and circumstances as show that both parties, at the time the services were rendered, contemplated or intended pecuniary recompense other than that which arises naturally out of the family relation. (*Miller* v. *Miller,* 16 Ill. 296).

A contract is express "where it consists of words written or spoken, expressing an actual agreement of the parties;" it is implied "when it is evidenced by conduct manifesting an intention of agreement." (3 Am. & Eng. Enc. of Law, page 842). Anderson, in his law dictionary, says that a contract is express "when the agreement is formal and stated either verbally or in writing, and is implied when the agreement is matter of inference and deduction." In *Ex parte Ford,* 16 Q. B. Div. 307, it was said that, "whenever circumstances arise in the ordi-

nary business of life in which, if two persons were ordinarily honest and careful, the one of them would make a promise to the other, it may properly be inferred that both of them understood that such a promise was given and accepted." In *Marzetti* v. *Williams*, 1 Barn. & Adol. 415, Lord TENTERDEN said: "The only difference between an express and an implied contract is in the mode of substantiating it. An express contract is proved by an actual agreement; an implied contract by circumstances, and the general course of dealing between the parties;" in the same case PARKE, J., said: "The only difference, however, between an express and an implied contract, is as to the mode of proof. An express contract is proved by direct evidence, an implied contract by circumstantial evidence;" and PATTERSON, J., said: "But the only distinction between the two species of contracts is as to the mode of proof. The one is proved by the express words used by the parties, the other by circumstances showing that the parties intended to contract." An agreement may be said to be implied, when it is inferred from the acts or conduct of the parties, instead of their spoken words. "The engagement is signified by conduct instead of words." (*Bixby* v. *Moor*, 51 N. H. 402).

This question has been before the Supreme Court of Wisconsin in a number of cases. In *Hall* v. *Finch*, 29 Wis. 278, where the plaintiff presented a claim against the estate of her deceased brother for the value of her services as housekeeper during several years while she resided in his house, acting and treated as the mistress thereof, the court, after stating the general rule, that the relation existing between the parties, as parent and child, step-parent and step-child, brother and sister, and the like, raises a presumption that no payment or compensation was to be made beyond that received by the claimant at the time, holds that this presumption can

only be overcome by clear and unequivocal proof to the contrary; that the evidence must be clear, direct and positive that the relation between the parties was that of debtor and creditor; that the party, seeking to recover compensation for services rendered under such circumstances, must show an "agreement or understanding that they were to be paid for;" and the court there uses the following language: "In regard to such agreement or understanding, it is manifest from the nature of the case, that it can in general be arrived at only by express stipulation between the parties; and, accordingly, we find the best considered authorities holding that an express contract must be shown." Then follows a review of quite a number of authorities, mostly Pennsylvania decisions, two of which, *Hartman's Appeal*, 3 Grant's Cas. 271, and *Lynn* v. *Lynn*, 29 Pa. St. 369, hold, that there can be no recovery for services in such cases without proof of an express contract.

In *Pellage* v. *Pellage*, 32 Wis. 136, where the action was by a son against his father for services rendered to the latter by the former after he became of age, it was held that, where such a relation of kindred exists, the law will imply no promise on the part of the father to pay for the services of the son, the presumption being that he rendered them gratuitously, or in consideration of having a home with his father, and being furnished with board and clothing and care and attention in sickness; that the son cannot recover for his services in such a case without showing that a contract existed between him and his father, by which the latter agreed to pay for such services; that the proof of such contract is not to be placed upon the same grounds as a contract between strangers unaffected by any personal relation; that the evidence of the contract must be positive and direct; that the contract cannot be inferred from circumstances and probabilities; and that "there should be evidence

which would warrant a jury in finding that there was an express contract or agreement to that effect."

In *Tyler* v. *Burrington*, 39 Wis. 376, where the plaintiff, having been received in infancy into a family not of kin to her, sought to recover for services rendered to such family, the doctrine of the *Hall* and *Pellage* cases seems to be somewhat modified, it being held, that "an express contract to pay, or the relation of master and servant, may be as fairly and incontrovertibly established by circumstantial evidence as by direct evidence;" that the mere fact of plaintiff's reception in her infancy into the family of the deceased implied no contract to pay her for any services she might render to it, "though such a contract might be implied from the surrounding circumstances;" "that, if it appeared expressly, or from the surrounding circumstances, that she was so received in the relation of a child, the law excludes an implied contract to pay her wages for her services; but that she could recover upon an express contract to pay her, which might be established by direct and positive evidence, or by circumstantial evidence equivalent to direct and positive;" that "failing to prove an express contract, it rested with her to establish an implied contract by the surrounding circumstances;" that "mere expectation on his part to pay and on her part to receive wages would not constitute an express contract, unless, by mutual expression of the expectation, it became consensual;" that "expectation looks rather to an implied than an express contract;" and that "if established by competent evidence, as entering into the *res gestœ*, such expectations of these parties might give color to circumstances tending to show that they ripened into a mutual understanding, an express contract."

In *Wells* v. *Perkins*, 43 Wis. 160, where a step-son sued his step-father for services rendered the latter after the plaintiff reached his majority, an instruction was con-

demned, because it was open to the objection "of con-founding circumstances from which a contract might be implied with circumstantial evidence of an express contract;" and it was held, that the law excludes an implied contract, and that the plaintiff could only recover upon an express contract, which "might be established by direct and positive evidence, or by circumstantial evidence equivalent to direct and positive."

It will be noticed, that the cases in Wisconsin differ from the English cases in holding, that an express contract may be established by circumstantial evidence.

In *Ayres* v. *Hull*, 5 Kan. 419, it was held, that, where a sister resides in the family of her brother, performing the ordinary services of a housekeeper and receiving clothing and the benefits of a home for nearly eight years without keeping any account, and without any promise or contract or understanding that she should receive wages, the law will not imply a contract for services rendered, nor hold the brother's estate chargeable with a claim made for such services for the first time after the death of the brother. (See, also, *Williams* v. *Hutchinson*, 3 N. Y. 319 ; 5 Barb. 128).

In *Mills* v. *Joiner*, 20 Fla. 479, where a daughter of full age brought suit against her father for services while living with him at his home and as one of his family, it was held to be a presumption of law that he was not bound to pay her, but that "this presumption may be overcome by proof of a special contract, express promise, or an implied promise ; and such implied promise or understanding may be inferred from the facts and circumstances shown in evidence;" and that "the jury should have been further instructed that, if, under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief, that it was the understanding of the parties, that compensation should be made for such services, then the jury should find an implied promise."

In *Scully* v. *Scully*, 28 Iowa, 548, where a sister filed a claim against the estate of her deceased brother, a bachelor, for services in doing his house work while a member of his family, it was said: "Where it is shown that the person rendering the service is a member of the family of the person served, and receiving support therein, either as a child, a relative or a visitor, a presumption of law arises that such services were gratuitous; and in such case, before the person rendering the service can recover, the express promise of the party served must be shown, or such facts or circumstances as will authorize the jury to find that the services were rendered in the expectation, by one of receiving, and by the other of making, compensation therefor."

In *Smith* v. *Johnson*, 45 Iowa, 308, it was held that no recovery can be had in such cases where there is no express contract, and "it is not shown in the record that the services were performed with the expectation, on the part of either, that they were to be paid for."

We are inclined to hold, that an express contract may be proved not only by an actual agreement, by direct evidence, by the express words used by the parties, but also by circumstantial evidence; and that an implied contract may be proved by circumstances showing that the parties intended to contract, and by the general course of dealing between them. In *Miller* v. *Miller, supra*, an instruction was approved which stated that it was "incumbent on the plaintiff to prove an express hiring, or circumstances from which an express hiring may reasonably be inferred," etc.; and in *Brush* v. *Blanchard*, 18 Ill. 46, it was said: "There is no evidence of an express contract to pay for services, nor are there any facts in evidence from which such contract can be implied." Similar language is also used in *Faloon* v. *McIntyre*, 118 Ill. 292, and in *Collar* v. *Patterson*, 137 id. 403.

The strict rule, laid down in the cases in Wisconsin and Pennsylvania, has its basis in the danger of fraud

and perjury by permitting any member of a family to insist on a greater share of the property of an estate than is given by the law, or by a will, upon the ground that it is due for services. The encouragement of claims for such services is apt to destroy the peace and harmony of families through the strife and controversy resulting therefrom. The rule, in this State is stated in *Miller* v. *Miller, suprá*, where we said: "Where one remains with a parent, or with a person standing in the relation of parent, after arriving at majority, and remains in the same apparent relation as when a minor, the presumption is, that the parties do not contemplate payment of wages for services. This presumption may be overthrown, and the reverse established, by proof of an express or implied contract, and the implied contract may be proven by facts and circumstances, which show that both parties, at the time the services were performed, contemplated or intended pecuniary recompense other than such as naturally arises out of the relation of parent and child." This language was quoted and approved in the recent case of *Switzer* v. *Kee*, 146 Ill. 577.

But when it is said, that a contract to pay for such services may be implied, something more is meant than the mere promise to pay, which the law implies where one person does work for another with the knowledge and approbation of that other. The implied promise thus raised by the law is rebutted, when there is shown such a relation between the parties, as to exclude the inference that they were dealing on the footing of contract. (*Ayres* v. *Hull, supra;* 3 Am. & Eng. Enc. of Law, page 861). The evidence must show, that, when the services were rendered, both parties expected them to be paid for. (*Miller* v. *Miller, supra; Byers, Jr.* v. *Thompson*, 66 Ill. 421; *Fruitt* v. *Anderson*, 12 Ill. App. 421). The facts and circumstances must be such as to show, that, at the time the services were rendered, the one expected to receive payment and the other to make payment. (*Fruitt*

*v. Anderson, supra).*   If the expectation of each would not constitute a contract unless there was an expression of that expectation, such criticism would not apply here because the jury were instructed as follows :

"If the jury believe, from the evidence, that the defendant requested plaintiff to do the service in question, and by words or acts knowingly gave her to understand that she would be paid for doing it, and that plaintiff, in compliance with such request, (if there was any,) did the work in question for the defendant, then she is entitled to recover."

"The relationship existing between the parties, and the fact that they and defendant's mother lived together as a single household while the work was being done for which this suit is brought, will not bar a recovery in this case, if the jury believe, from the evidence, that the defendant requested the plaintiff to do the service in question and promised to pay her for it, or by words or acts knowingly led her to believe that she would be paid for doing it."

The jury were further instructed, that, where voluntary services are rendered by those sustaining family relations, the presumption of law is, that the parties do not contemplate payment or receipt of wages; and that, where services are rendered by those near of kin, or by those sustaining family relations, the law will imply no contract for compensation; and that, unless a contract to pay is shown in such case, no recovery can be had. It is true, that, in instructions asked by the defendant and given for him, the jury were told, that the plaintiff could not recover unless she proved by the preponderance of the evidence an express contract to pay for her services ; but they were told, in another instruction, that an express contract might be established by circumstances and the conduct of the parties, or by words in connection therewith; and we do not think that the jury

could have been misled when all the instructions are considered together as one charge, and in view of the evidence heretofore and hereinafter referred to.

In *Morton* v. *Rainey*, 82 Ill. 215, plaintiff presented a claim for services against the estate of his deceased uncle, in whose family he had lived from the time he was eleven years old until he reached his majority, and during that time had labored for the deceased, and received his board, clothing and medical attendance ; and we there said: "While appellee during minority was provided by the deceased with clothing, medical attendance and all the necessaries furnished by a parent to a child, after his majority he provided his own clothing, paid for his washing, and in fact received nothing from the deceased except his board. Under such circumstances, the presumption, that appellee was working as he did when a minor, is removed, and the facts are sufficient to establish an implied contract on the part of the deceased to pay appellee what his services were reasonably worth." Such facts, as were there held sufficient to establish an implied contract, exist in the case at bar. In addition, appellee swore that, on three different occasions while she lived in appellant's house, she talked with his mother in his presence about her compensation, and, during these conversations, he said that he would pay her for her time. It is true, that he contradicted her in reference to this matter, but it was for the jury to pass upon the evidence ; the facts are settled by the judgment of the Appellate Court, so far as we are concerned.

We find no error in the record, which, in our opinion, would justify a reversal.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*