## George W. Deppen v. James G. Personette, etc.

1.   PRESUMPTIONS—*Where Services are Rendered by a Foster Child.*— Where services are rendered by a stranger taken into a family to be brought up as a child, the presumption is such services are intended to be gratuitous; but this presumption may be overcome by proof of an express contract to pay for such services, or of circumstances which show that both parties intended pecuniary recompense when the services were rendered.

2.   SAME—*When Not Overcome by Proof that the Foster Parents Have*

*Not Schooled Such Child.*—The rule that such services are presumed to have been rendered because of the family relation is not obviated by proof that the foster parents have not clothed the child as well as their own, or have caused him to work more than their own, or have not sent him to school as long each year as the law requires.

Assumpsit, for services. Appeal from the County Court of Ogle County; the Hon. R. S. FARRAND, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed February 13, 1901.

FRANCIS BACON, attorney for appellant.

J. C. SEYSTER and W. P. FEARER, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a suit by Personette, a minor, against Deppen, to recover for services rendered. The declaration was the consolidated common counts. Defendant pleaded non-assumpsit and three special pleas, which set out in detail the relinquishment and the contract hereinafter referred to, and the family relation between defendant and plaintiff, and that the services were rendered under that relation. It is stated by counsel that several special replications were filed to these special pleas, but we do not find them in the record. Plaintiff recovered a verdict for $400. Motions for a new trial and in arrest of judgment were denied and judgment rendered on the verdict. Defendant appeals.

The minor's father died and his mother married again. Afterward, on October 31, 1892, the mother executed a paper by which she relinquished this child, and all claim to his services, to a society engaged in finding homes for destitute children, and agreed not to claim compensation for his services nor to remove him from any home in which the society might place him, and agreed that the society might obtain his legal adoption by the persons with whom the society might place him. On November 4, 1892, the society placed him in the family of defendant, where he remained till July, 1899, when he left on account of a disagreement with defendant. Plaintiff, commonly called Grant by the witnesses, was about eleven and one-half years old

when he was placed in defendant's family. A contract was afterward executed between said society and defendant and his wife. It was dated October 27, 1894, and was executed about that time, but bears internal evidence of having been drafted about the time the minor entered defendant's family. The contract recited that the society had placed said minor in the care, custody and control of defendant and his wife, at their home, " to be trained, loved and educated so as to be fitted for the requirements of life." By the contract the society agreed to leave said minor in the care of defendant and his wife " so long as they shall love, cherish and nurture, educate and properly care for said child in a suitable manner, as the parties of the second part would in duty bound be required to love, nurture and educate, care and provide for said child if it were their natural child." Defendant and his wife therein agreed " that they will love, nurture, educate and care for said child in all ways suitable to their station and condition in life, the same as they would in duty be bound to do were the said child the natural child of said parties; " and that when said child became twenty-one years old they would give him $100 and two suits of clothes, " and allow the said child after he became of lawful age to go to and from their home, and to enjoy said home as freely as though he was the natural child of said parties of the second part." The minor was received into defendant's family, and thenceforward treated by the defendant and his wife as a member thereof. He ate at the same table as the family and had the same food the rest did, was comfortably clothed, was sent to school, was given spending money to attend county fairs, theaters, shows and entertainments, was nursed and cared for when sick, and had medicines and medical attendance furnished him. His services were obviously worth little or nothing when he was first received into the family. They had become of some value before he left. The occasion of his leaving was that he had curried a horse, and defendant said that it was not properly done and told him to curry the horse again. Grant made an impudent

reply and defendant took the currycomb away from him. Defendant never struck Grant or used violence toward him, and Grant did not testify to any ill treatment. After Grant left defendant a guardian was appointed for him for the purpose of bringing this suit.

It will be assumed for the purpose of this decision that the mother's relinquishment, and the contract between the society and defendant and his wife, were not binding upon the minor and his guardian, though the proof shows the boy knew of the contract and that both he and defendant supposed it was binding. These papers, however, tend to prove how the boy was received into this family. Indeed, the evidence does not admit of any other conclusion than that Grant was received into the family as a member of it, to be brought up by defendant and his wife with their children and as a part of their family, and that he remained there under those terms during all the time he was there, with a full knowledge on his part that he was not to be paid wages.

The rule governing the case of a stranger taken into a family to be there brought up as a child is the same as in the case of an own child or other relative of the heads of the family, which is thus stated in Heffron v. Brown, 155 Ill. 322 :

"Where services are rendered by one admitted into the family as a relative, the presumption of law is that such services are gratuitous, and that the parties do not contemplate the payment of wages therefor. This presumption, however, may be overcome by proof. The proof necessary to overcome the presumption may be either of an express contract, or of a contract established by such facts and circumstances as show that both parties, at the time the services were rendered, contemplated or intended pecuniary recompense other than that which arises naturally out of the family relation. * * * But when it is said that a contract to pay for such services may be implied, something more is meant than the mere promise to pay, which the law implies where one person does work for another with the knowledge and approbation of that other. The implied promise thus raised by the law is rebutted, where there is shown such a relation between the parties as to exclude

Deppen v. Personette.

the inference that they were dealing on the footing of contract. The facts and circumstances must be such as to show that at the time the services were rendered, the one expected to receive payment and the other to make payment."

There is no evidence in this record which would justify the jury in finding that payment was expected or intended between the parties. It is clear nothing of the kind was contemplated by them.

Counsel for plaintiff practically concede the rule of law governing the relations between a child so taken into a family and its foster parents, and that the proof here would not warrant a recovery under that rule. But it seems to be contended for plaintiff that that rule is not applicable if the foster parents have not treated the child as well as their own, or have not clothed him as well, or have caused him to work more than their own children, or if they have not sent him to school as much as their own children or as many weeks in each year as the law prescribes children shall be sent to school; or rather, that if the jury conclude the foster parents have not done their full duty by the child, then the rule is abrogated and the suit for the value of the child's services may be maintained. Reliance is had upon Miller v. Miller, 16 Ill. 296. All that was there held is that if the child were treated differently from the other children of the family, and did the work of a servant and was treated as a servant, these were circumstances to be considered in determining whether the parties expected compensation would be made. The instructions given at plaintiff's request here went far beyond the Miller case. They told the jury in effect, that though plaintiff was received into the family and boarded and clothed and sent to school, yet if he was treated as a servant rather than as defendant's own child, then the law implied a promise by defendant to pay what his services were reasonably worth, while the doctrine of the Miller case is only that such fact is a circumstance to be considered in determining whether the parties expected compensation to be made, and the right to recover there was still made to depend upon the decision whether both parties intended

compensation. When Grant entered this family defendant had two sons, one six and the other two years old. It was natural that they should do less work and go to school more than Grant during the next seven years, because he was so much older. Such would naturally have been the case if Grant had been defendant's own son. It is obvious from the evidence that this was a family of common station in life, where there were no servants as distinguished from idlers, but each did what he or she could according to age and ability. Both Grant and his school teacher testified he was not sent to school till December 3, 1894, over two years after he entered the family; but before the proofs were closed it was conceded he entered school November 7, 1892, about a month after he entered the family; and it is proven he was sent to school the first five winters. He was not sent, however, as many weeks in each year as the statute required. This was one of the circumstances relied upon to authorize a verdict for plaintiff. Three instructions were given at the request of plaintiff which stated at length the duty of every person having control of a child to send him to school a certain number of weeks each year between certain ages; and that if defendant failed to perform that duty to plaintiff he was not excused because plaintiff did not complain or was willing to stay out of school; and this failure to send plaintiff to school the full number of weeks provided by law was stated as one of the elements which would authorize a verdict for plaintiff. We are of opinion these instructions were erroneous. The statute provides a penalty for a violation of its requirements in reference to sending a child to school; but we are of opinion a failure to send plaintiff to school the exact number of weeks required by statute had no more tendency to give plaintiff a cause of action for his services while an inmate of defendant's family, than the same course toward defendant's own son would have to give him a claim upon his father for wages. Besides, these instructions ignore the evidence, which is that plaintiff was unwilling to go to school, and that defendant urged him to go and he resisted. We think

it was also error to instruct the jury how the money plaintiff might recover would be expended.   The third, fourth, fifth and sixth instructions requested by defendant and refused, were in harmony with the views herein expressed.   Two of them were mere abstract propositions, not applied to this case, and they were therefore properly refused.   The others should have been given, for the rules they stated were not fully expressed in other given instructions.   The judgment is reversed and the cause remanded.