## Theodore Trouth, Conservator, Appellee, v. Henry Brown, Executor, Appellant.

### Gen. No. 5,840.

1. Guardian and ward, § 76*—*when estate of conservator not entitled to compensation for care and support of ward.* Where an executor filed a report concerning the condition of accounts of the deceased as conservator of his feeble-minded stepdaughter and the report sought to charge the estate of the ward with board and clothing, care and doctor bills while she was living with the deceased, *held* that a judgment disallowing such charges was proper, it appearing that the ward did much of the housework and there was no evidence to show that deceased ever intended to charge her for care and support.

2. Contracts, § 25*—*obligation to pay for services and support of person living in family relation.* Where a person lives in the family as if a member thereof and renders services and receives support, the services and support are all contributions to the family relation, and neither party can recover from the other therefor unless there was an express contract that compensation should be paid, or unless the circumstances are such that it will be a reasonable inference therefrom that a contract did exist or that compensation was mutually intended.

Appeal from the Circuit Court of Whiteside county; the Hon. Frank D. Ramsay, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed April 15, 1914.

A. A. Wolfersperger, for appellant.

N. G. Van Sant and Robert W. Besse, for appellee.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Vol. CLXXXVI 15

MR. PRESIDING JUSTICE WHITNEY delivered the opinion of the court.

This is an appeal from a judgment of the court below which, according to the recitals in the appeal bond given by appellant, is from a judgment of the Circuit Court for costs of suit, although in fact the judgment of the Circuit Court is one disallowing appellant's claim of a balance due him as executor, set forth in a report made by him as executor of the will of Christian Hartman, deceased, wherein he purported to show the condition of the accounts of said Christian Hartman from a certain date up to his death as conservator of said Louisa Kirscher, and while numerous errors are assigned, no question is raised or suggested in the argument except that of disallowing appellant's claim at his costs.

In 1866, when the said Louisa Kirscher was about six years old, her widowed mother married said Christian Hartman and Hartman went to live on the farm which had been the property of the father of Louisa Kirscher until his death. Louisa Kirscher was feeble-minded. They lived on the farm about nineteen years after the marriage and then moved into Sterling. At some time, not shown in the evidence, Christian Hartman was appointed conservator of the estate of Louisa Kirscher. He died in 1912, leaving a will which was probated, and in and by his will he gave to his wife his real and personal property to have, to use and enjoy so long as she should live, and at the death of his wife he gave the same property to said Louisa Kirscher to have, to use and enjoy so long as she should live, and at her death to certain persons named in the will in fee. His executor filed, in the matter of the conservatorship of Louisa Kirscher, a report covering the conservatorship of Hartman from March 1, 1901, to March 1, 1912. He charged Christian Hartman with $2,400 as the amount of the estate at the date of the last report, March 1, 1901, and with interest on that sum from March 1, 1901, to May 1, 1912, at five per

cent., making a total of $3,720; however, there is nothing in the record from which we can determine what any report made by Christian Hartman in his lifetime as conservator showed either as to debits or credits. He then sought to charge Louisa Kirscher with board and clothing, care and doctor bills from March 1, 1901 to March 1, 1912, at $5 per week. No receipts or vouchers were filed with this report, although the report purported to be "as per vouchers herewith submitted," nor was there any order of any court authorizing the payment of any sums for board and clothing, care and doctor bills. On the hearing on this report, the County Court allowed the claim in favor of Christian Hartman's estate for board and clothing, care and doctor bills in the exact amount of the interest which the report confessed. Each party appealed from that decision to the Circuit Court and perfected an appeal. The case was tried without a jury in the Circuit Court and the court entered an order disallowing the claim of the executor for the support of Louisa Kirscher and dismissed the claim at the costs of claimant, said costs to be paid in due course of administration, and the recitals in the appeal bond given by the executor are as above stated.

Appellant argues that the real question is whether a conservator can charge for the support and necessaries of life of his ward and spend the fund of his ward therefor without an order of court, and whether he can charge his feeble-minded stepdaughter for necessaries and support. That, however, is not the question really presented by this record. There is nothing to show that Hartman ever did charge his ward for her board and clothing, care and medical attendance, or that he ever did any act or said anything that indicated that he had any intention of making any such charge. It is the executor who made the charge in that behalf after Hartman's death. Hartman married Mrs. Kirscher, the mother of Louisa Kirscher, and went

to live with her on the farm which had been her deceased husband's and lived there with them for nineteen years. Whether this was then the farm of Louisa Kirscher or her mother we are not informed. After nineteen years they moved into Sterling and obtained a home there. From some source at some time Louisa Kirscher became the owner of a farm, and in 1901, at the report preceding the one now in question, the conservator had charged himself with the balance of $2,400 belonging to his ward. We do not know when Hartman was appointed conservator. Early in this trial the appellant objected to the introduction of any evidence that showed the condition of things between the conservator and his ward prior to 1901, the date of the last report, and the court sustained the objections of appellant and thereby the inquiry was limited to what had occurred since the last report. We must assume that if on the former report Hartman had asked for an allowance for clothing, board, care and medical attendance of the ward, appellant would have shown that fact and would not have objected to going back of 1901. From the time of the marriage until Hartman died, a period of forty-six years, this feeble-minded girl and woman lived in the family of Hartman. According to the evidence offered in behalf of Louisa Kirscher, she was capable of doing much work in the household and did do much work of all kinds that women would perform, and much of the time when there was no other servant in the house and considerable of the time when the mother was ill.

According to the evidence introduced by the appellant, she was so feeble-minded that she was incompetent to do anything that was of any value. Upon an examination of the testimony we think that offered in behalf of Louisa Kirscher comes from sources likely to be the best informed and the court was warranted in finding that she did all kinds of housework; that she cooked the dinner on Sunday while the rest of the family were at church, and many other times when

they were absent from home, and that she did other household work.

In *Heffron v. Brown*, 155 Ill. 322, the rule is laid down that where a person lives in the family as if a member thereof and renders services and receives support, that the services and support were all contributions to the family relation and neither party can recover from the other therefor unless there was an express contract that compensation should be paid, or unless the circumstances are such that it will be a reasonable inference therefrom that a contract did exist or that compensation was mutually intended.

It does appear from the evidence that Hartman said he had sometimes used a little of Louisa's interest when he needed it, but that he had paid it all back. It is also in evidence that he said, "I don't know what I would do if it wasn't for Louisa. I don't know how we would get the work done, because when her mother wasn't well Louisa had to do it all." It is also in evidence that Louisa called Hartman, "father."

From all this evidence it is clear to us that Hartman did not intend to use any of Louisa's money, principal or interest, or charge her for her care and support. There is nothing in the evidence from which any intention to charge her could be found. The court below properly allowed nothing for this care.

Judgment affirmed.

*Affirmed.*