Harold Rush and Carrie Rush, Plaintiffs-Appellants, v. The Estate of John Rush, Deceased, Defendant-Appellee.

Gen. No. 11,402.

Second District, Second Division.

October 10, 1960.

Dyer, Richmond, and Moore, of Hoopeston, for appellants. Fleming and McGrew, of Watseka, for appellee.

CROW, P. J.

This action was commenced by the filing by the plaintiffs-appellants Harold Rush and Carrie Rush of a claim in the County Court of Iroquois County against

the defendant-appellee The Estate of John Rush, deceased, as follows:

> "Claim of Harold F. Rush and Carrie
> C. Rush against Estate of John Rush,
> Deceased: 'For services rendered to the
> person, board, room, care, and financial
> loans, from October 2, 1953 to January
> 4, 1955               $3900.00
> Minus credit for two promissory notes   1000.00
> _____
> $2900.00' "

The County Court denied the claim. There was an appeal to the Circuit Court of Iroquois County, and a jury was impanelled. At the close of all the evidence for both parties, the defendant moved for a directed verdict upon the ground that the evidence was insufficient to substantiate a verdict for the plaintiffs. A like motion for a directed verdict at the close of all the evidence was made by the plaintiffs for a directed verdict in their favor upon the ground the defense was insufficient in law. The Court granted the motion of the defendant and entered a judgment for the defendant and denied the plaintiffs' motion. The defendant had previously at the close of the plaintiffs' evidence also moved for a directed verdict in its favor, which motion was denied. The plaintiffs' post trial motion was denied.

        ■ We think the rule applicable to this case and the question for determination on a motion for a directed verdict in favor of the defendant at the close of all the evidence is whether, when all of the competent evidence is considered, together with all the reasonable inferences and intendments to be drawn therefrom, in its aspect most favorable to the plaintiff, there is or is not a total failure of evidence to prove any

one or more necessary elements of the plaintiff's alleged cause of action: Coal Creek Drainage & Levee Dist. v. Sanitary Dist. of Chicago (1929), 336 Ill. 11, at p. 26, 167 N. E. 807; LeMay v. Jenkins (1955), 6 Ill.App.2d 57, at p. 59, 126 N.E.2d 524.

Considering the evidence in that manner, it is substantially to this effect, so far as material: John Rush was an elderly man who resided in Milford, Iroquois County, Illinois. He had five daughters and one deceased son, who was the father of the plaintiff Harold Rush. The plaintiff Carrie Rush is the wife of Harold. Harold and Carrie Rush had been living in Indiana prior to the late fall of 1953. John Rush was anxious to have his grandson Harold move to Milford and made repeated inquiries at a local bank about a loan for his grandson in order for the grandson to buy a farm. Subsequently, Harold Rush did buy a farm in the region of Milford and returned to Illinois in the fall of 1953, though he continued working in Indiana for a while after they moved. After Harold Rush and his wife moved to the farm in Illinois, John Rush, until his death in January, 1955, stayed part of the time at his own home in Milford. During the remainder of the period until his decease he lived, off and on, with his grandson, Harold Rush and Carrie Rush, at their home. During this period of a year and two or three months before his decease John Rush became ill, from which illness he recovered, and during part of the time of his illness, for a period of two months about, he was cared for by his daughter, Dorothy Wixson, at his own home in Milford and he paid her $300.00 for nursing and housekeeping services for this period. During the remainder of the time he was, evidently at different intervals, off and on, looked after by Harold and Carrie Rush, in that he was given board, room, and personal care such as transportation while on business and to

245

the hospital, nursing during certain intervals when he was ill, and shaving him, at his own home or at Harold and Carrie Rush's home. John Rush in the fall of 1954 stated that he was going to pay the plaintiffs something and he told Carrie Rush that he intended to pay her for her services the same as he paid his daughter, Dorothy Wixson. John Rush had prior to his decease loaned Harold Rush $1,000.00, evidenced by two promissory notes, which loan and notes were outstanding at his decease. He had never paid either Harold or Carrie Rush for any care or keep except for a few particular incidental expenses and isolated services. The plaintiffs did not make any claim against John Rush during his lifetime. There was no evidence of any financial loans by them to him.

█ █ In Heffron v. Brown (1895), 155 Ill. 322, at page 326, 40 N. E. 583, the Court stated:

> "Where services are rendered by one admitted into the family as a relative, the presumption of law is that such services are gratuitous, and that the parties do not contemplate the payment of wages therefor. This presumption, however, may be overcome by proof. The proof necessary to overcome the presumption may be either of an express contract, or of a contract established by such facts and circumstances as show that both parties, at the time the services were rendered, contemplated or intended pecuniary recompense other than that which arises naturally out of the family relation. (Miller v. Miller, 16 Ill. 296.)"

█ From the evidence we conclude that there was no express contract entered into between the plaintiffs and John Rush. An express contract may be proved not only by an actual agreement, by direct evidence, by the express words used by the parties, but also by circumstantial evidence. An implied contract

246

may be proved by circumstances showing that the parties intended to contract, and by the general course of dealing between them. There can be no implied promise, though, where there is shown such a relation between the parties as to exclude the inference that they were dealing on the footing of contract. The evidence must show that when the services were rendered both parties expected them to be paid for: Heffron v. Brown, supra. The facts and circumstances necessary to establish an implied contract must be such as to show that at the time the services were rendered the one expected to receive payment and the other to make payment: Fruitt v. Anderson (1883), 12 Ill. App. 421.

██ In Miller v. Miller (1855), 16 Ill. 296, the Court stated, p. 298:

> "Where one remains with a parent, or with a person standing in the relation of parent, after arriving at majority, and remains in the same apparent relation as when a minor, the presumption is, that the parties do not contemplate payment of wages for services. This presumption may be overthrown, and the reverse established, by proof of an express or implied contract, and the implied contract may be proven by facts and circumstances, which show that both parties, at the time the services were performed, contemplated or intended pecuniary recompense other than such as naturally arises out of the relation of parent and child."

We conclude that, under the circumstances, considering the applicable presumption as to the character of the claimed services, there was no implied contract.

██ There was, moreover, no evidence at all as to the value of the services claimed to have been rendered by the plaintiffs. From the nature of this claim it appears to be a joint claim by the two plaintiffs and

247

there is no specification in the claim or in the evidence of hours, weeks, or months devoted to the claimed services, or the claimed value, either as agreed upon by the plaintiffs and the decedent or the reasonable and customary value thereof, of any individual services. It will be noted that the total amount of the claim is $3900.00, with a credit of $1000.00 for two promissory notes, leaving the balance of the claim $2900.00, and it is for "services rendered to the person, board, room, care, and financial loans, from October 2, 1953 to January 4, 1955." There is nothing at all in the record about any claimed "financial loans" by the plaintiffs to the decedent John Rush. As to the other features of the claim there was no evidence as to how many meals were claimed to be involved under "board" or the allegedly agreed or reasonable and customary value thereof, or how many days, weeks, or months were claimed to be involved under "room" or the allegedly agreed or reasonable and customary value thereof, and as to "services" and "care" since there was no showing or testimony that there was any agreement to pay the plaintiffs any particular amount or at any particular rate, per hour, day, week, or month, the burden was upon the plaintiffs to present some competent evidence of the reasonable, customary value of the particular services which they claimed were rendered. See Heffron v. Brown, supra, p. 325. Even if it should be considered that there was an implied contract between the parties, upon the theory that there was an expectation of each party to the contract that one should receive payment and the other make payment, we are still confronted with the complete lack of evidence as to the value of "board," "room," "care," and "services," either by any claimed agreement or by the reasonable and customary value standard, to go to the jury for their determination. There is no evidentiary basis upon which the jury could have returned a ver-

248

dict for the plaintiffs in any particular amount even had it otherwise found for the plaintiffs.

Since the burden is on the plaintiffs to make their case, any claimed errors in the evidence produced by the defendant would not be material at present, and we have not considered those.

The trial court was not in error in directing a verdict for the defendant and entering judgment accordingly, and the same will be affirmed.

Affirmed.

WRIGHT, J., concurs.

SPIVEY, J., concurs.