Irene Dewein, Plaintiff-Appellant, v. Estate of Edward G. Dewein, Deceased, and Helen Dewein and St. Clair National Bank of Belleville, Illinois, Executors of Said Estate, Defendants-Appellees.

Gen. No. 61–F–11.

Fourth District.

May 11, 1961.

Farthing and Farthing, of Belleville, for appellant.

Russell H. Classen, of Belleville, for appellee.

SCHEINEMAN, J.

The probate court refused to allow plaintiff's $10,-000 claim against the estate represented by the defendants. The appeal comes directly to this court under Sec. 329 (par. 483) of Chap. 3, Illinois Revised Statutes, 1959.

The claim was for services rendered by plaintiff to her parents, over a period of 27 years, including nursing, management of property and other services. Both

parents are dead, but this claim is not filed against either of their estates. It is filed against the estate of Dr. Edward G. Dewein, a deceased brother of plaintiff. A summary of the evidence follows.

Plaintiff worked in St. Louis for a time, and had studied nursing, but never took up the profession. Instead, she went to live with her parents about 1930, and looked after them and their property. They owned an apartment house, in which they occupied one of the apartments, and they owned a small residence behind it, also a store building in the same block, with three or four apartments above it. Plaintiff managed the property, collected the rents, performed all necessary chores, did the marketing, paid all bills, and provided nursing services for her parents.

Her father was an invalid for a number of years. He died in 1948. Her mother survived for another nine years, and died in March, 1957. During the last two years of her life she required much attention, frequently being bedfast. Dr. Dewein, plaintiff's brother died June 29th, 1959. There is no evidence that, during all this time, plaintiff ever said anything to indicate she claimed any contractual relation with her brother, in his presence or otherwise. There is no evidence of that sort during the year and a half that her brother survived her mother. So far as appears from the evidence, the claim was asserted for the first time after her brother's death.

The claim rests upon the testimony of one witness, a practical nurse, who had occupied an apartment above that of the Deweins' for a number of years, and who frequently visited the Deweins. She stated what purports to be a conversation when she was present with plaintiff and Dr. Dewein, at the mother's bedside, about five months before the latter's death. She also recited a similar incident, at a later time, with date not specified. She said Dr. Dewein also made similar statements out of plaintiff's presence.

447

The remark of Dr. Dewein dated as being in October, 1956, is quoted as follows: "Sis, I am so grateful you are taking care of mother, and I am certainly going to see you are taken care of for life, you deserve it."

The subsequent remark, made when the same three persons were having coffee together, is quoted thus: "Sis, don't you worry about the future, I am going to see you are taken care of."

The probate judge, who saw and heard the witnesses, denied the claim for lack of evidence, and it certainly would be difficult for a reviewing court to say the decision was contrary to the manifest weight of the evidence. The quoted remarks show due appreciation for what had been done, but lack the essential elements of a contract. They are more in the nature of an unenforcible promise to make a future gift as an expression of appreciation.

Certainly, the quoted remarks regarding some provision for the care of plaintiff in her declining years, so that she need not worry about the future, are very far from an agreement to pay the reasonable value of nursing services over a period of 27 years. Doubtless the persons present were assuming that plaintiff would continue to care for the woman in what must have been obviously the last days of her life. Yet the doctor's statement contained no such condition nor any request in that regard, nor was there any indication by plaintiff that she would do so because of the doctor's promise. Plaintiff did not give up any proposition of her own, nor change her position in any way, but simply continued for a few more months that which she had been doing of her own accord for many years.

Plaintiff's brief cites Waldron, Adm. v. Alexander 35 Ill. App. 328, affirmed in 133 Ill. 30, 24 N.E. 557.

There one brother asked a second brother to give up a proposed enterprise and devote himself to the care of a third brother who was ill, and promised to pay for it. The second brother did as requested, and this was held to make a binding contract. In the case at bar there is no evidence that plaintiff was requested by anyone to change her position, nor of any promise to pay for her services rendered.

It is argued that it should be inferred the statement made in October, 1956, was a repetition of similar remarks over the years preceding. There is no testimony to that effect and the circumstances of an aged woman, seriously ill and bedfast, indicate a reason why the brother of plaintiff should be particularly sympathetic and appreciative of plaintiff's efforts. And when the witness was asked to fix the date with some degree of certainty, she referred first to the date of the woman's death, and then stated the date of the conversation. This is a strong indication that she was thinking in terms of the woman's last illness, a few months before her death.

Finally it is asserted that the doctrine of promissory estoppel should be applied. That doctrine arose in the "subscription" cases to make a promise enforcible when acted upon. It has been applied in a limited manner in other cases. 12 Am. Jr. Contracts, Section 112. The essential element of the doctrine is that the promisee has acted to his detriment in reliance on the promise.

The testimony in this case fails to support the claim that plaintiff "acted in reliance upon the doctor's promise to her." There is no indication that she had ever intended to act otherwise than the way she did. Surely, there can be no presumption or inference that after living with her mother for so many years, she was now about to desert her in the time of her great-

449

est need, but was persuaded to stay "in reliance on promises made to her." The record contains not even a hint in that respect. The finding of the Probate Court that the evidence fails to support the claim was correct and it is affirmed.

Judgment affirmed.

CULBERTSON, P. J. and HOFFMAN, J., concur.