In the Matter of the Estate of John A. McWain, Deceased. Arthur Huddleston, Administrator of the Estate of John A. McWain, Deceased, Petitioner-Respondent-Appellee, v. Florence Hoggatt, Respondent-Claimant-Appellant.

Gen. No. 10,754.

Fourth District.
December 22, 1966.

Phelps, Russell & Boyle, of Carlinville (John W. Russell, of counsel), for appellant.

Hebron & Denby, of Carlinville (W. W. Denby, of counsel), for appellee.

TRAPP, J.

This is an appeal from a judgment of the Circuit Court of the Seventh Judicial Circuit, Macoupin County, Illinois, in probate, denying a claim for services of Florence Hoggatt against the estate of John A. McWain, and ordering the delivery of certain assets held by Florence Hoggatt to the administrator upon a citation pursuant to petition of the administrator.

The claim for services and the citation to discover and procure assets were heard together.

A review of the evidence is necessary.

The claimant, Florence Hoggatt, is a married woman, who, at all relevant times, lived with her husband in her own home. For about 10 years prior to the fall of 1960 she lived at Bethalto and the decedent, John A. McWain, lived at Carlinville, Illinois. Claimant was a second cousin of the decedent, and she, her husband and family of four children were always quite friendly with the decedent and referred to him as "Uncle John."

During the ten-year period prior to 1960 the Hoggatts visited Mr. McWain at least twice a month, bought groceries and supplies for him and cared for him in other ways such as doing his laundry and taking him to the doctor. Mr. McWain had arthritis in his feet and had great difficulty in walking. On six occasions the Hoggatts took Mr. McWain on a vacation.

By October of 1960, Mr. McWain, who was then 82 years of age, was unable to take care of himself. The Hoggatts moved from Bethalto to Worden. At this time Mr. McWain requested Florence Hoggatt to get him a place to live and after his death it would be hers. He signed a blank check and Mrs. Hoggatt purchased a trailer for $1,133. She and her husband cleaned the trailer, moved it to their property immediately adjoining their home and connected it to the utilities.

From the time the trailer was located on the Hoggatt premises, and for fourteen months until he went to the hospital and later the nursing home, Florence Hoggatt took care of all of Mr. McWain's needs including cleaning the trailer, doing his laundry, taking him to the doctor, purchasing his groceries, running his errands, taking him food and caring for him. He was unable to walk to the store.

The trailer was purchased in the name of John McWain, although he did not direct that it be purchased in his name. In December of 1961, Mr. McWain wrote a note to the post office at Carlinville directing the payment of

361

$1,500 postal savings to Mrs. Hoggatt. On December 26, 1961, he wrote a note to the Carlinville National Bank as follows:

> "Please give Mrs. Hoggatt the remainder of my checking account.
>
> JOHN A. McWAIN."

There was then $915 in the checking account. He delivered $2,000 in government bonds to Mrs. Hoggatt for cashing. The check for the bonds did not arrive until after his death, and Mrs. Hoggatt delivered this check to the administrator.

Florence Hoggatt claims the trailer, the proceeds of the postal savings, the $915 balance of the checking account and $2,900 for services. All of her claims were denied by the trial court.

Since Mrs. Hoggatt took neither the title to, nor possession of the trailer, and since Mr. McWain occupied the trailer exclusively, it would appear that there was insufficient evidence of delivery of this property as a gift in the absence of any writing or corroborating testimony. In Northern Trust Co. v. Swartz, 309 Ill 586, 141 NE 433, the donee was in possession of the bonds, and a letter was written by the donor stating the bonds were to be held by the donee in fee simple.

The testimony of Mrs. Hoggatt with reference to the postal savings is inconclusive as to a gift. While she stated at one point that he told her to put the bonds in the bank in her name, and at another that he wanted her to have the money, she also stated:

> "The postal savings were all in John McWain's name. At the bank they wrote it in my name. We didn't know they were going to, I asked them to put 'For John McWain.' I took it to the bank like he told me, and put it in his name and mine. I opened a joint account with Mr. John McWain the same

362

day. We had to pay the nursing home bill. I paid his drug bill, and I paid the doctor that served him and came in to look at him. The drug and nursing home were paid out of the joint account; the doctor, I paid out of my own. After December 26 the amount in the joint account would have been $2,415.00. He did not direct me to pay these bills. He absolutely directed me to put this money in a joint account, also the bonds was to go in there."

Betty Herrmann, Mrs. Hoggatt's daughter, testified:

"He said, 'I want you to get all this cashed and put in the bank in your name and my name.' My mother became quite upset. No one ever mentioned money before. My mother said, 'Uncle John, do you know what you are doing, I would be able to write a check on your name.' He said, 'Absolutely, I want you to; you can write a check today.' He became quite angry because she couldn't believe he was doing this, because he was, I am sure, capable of doing whatever he wanted with his money, so he said. To me he said, 'You tell her what I want done.' So I explained to my mother he wanted a joint checking account".

Mrs. Hoggatt testified subsequently:

"I am not telling the court that he didn't tell me to pay bills out of his $915.00 I got from the National Bank by telling them in my own words these are for payment of bills; all he did was tell me he wanted me to cash them and put them in the bank in my name and his, even that day he said 'I want you to have this money'; my daughter said joint account but all I remember him saying, 'I want it in your name so you can write a check today if you wanted to.' I put it into a joint account. I am not

telling the court that he did not want his hospital and medical bills paid out of any cash monies that he might have had; he didn't say that. He talked exactly like he knew he was going to die. He said, 'the farm will sell for $2,000.00 and that would take care of the bills.' He said, 'I want you to have this.' "

Again, in reference to the bank account, Florence Hoggatt testified:

"I told the cashier at the Carlinville National Bank when I obtained the $915.00 that I needed the money to pay bills. I told Uncle John they wouldn't let me have the money. He said, 'Tell them I want the bills paid,' so I told them what he said."

We think the foregoing is inconclusive as to gift of the postal savings account, and is also inconclusive as to the gift of the bank account. It is also inconclusive as to absolute transfer in payment for services.

Taken as a whole the record indicates an incompletely expressed intent to transfer money or property in payment for, or in appreciation, of services rendered. It can fairly be said that the deceased did not expect the services to be rendered for nothing. In addition to the claimant, Floyd Stevens, Sr., and Rev. Arvis R. Fields testified that Florence Hoggatt took care of all of Mr. McWain's needs and that he depended on her entirely.

Our courts have had frequent occasion to consider claims for services against decedents' estates. In Miller v. Miller, 16 Ill 296, the court held that an agreement to pay for services of a daughter living at home would be implied if the daughter was treated differently from other daughters and did the work of a servant. In Heffron v. Brown, 155 Ill 322, 40 NE 583, where a niece came to decedent's home at his request and was housekeeper, nurse and washerwoman, the court held that a contract to pay the reasonable value of the services might be

implied from the circumstances. In Switzer v. Kee, 146 Ill 577, on 581, 35 NE 160, the court said:

"In the case at bar, the mother did not reside in the family of her son, the defendant in error, but separate and apart from him, in her own home, and with sufficient means of her own to care for her and supply her wants. *Owing to her helpless and critical condition it was deemed expedient and necessary to remove her to the home of defendant in error, in order that she might be properly cared for, which was done until her death, at great sacrifice on the part of her son and his family, and considerable expense.* Had Mary Kee been living in the home of defendant in error as a member of his family a different question might have been presented, . . . and no implied contract have arisen from the mere providing of the support or furnishing the care or attendance upon her. . . ." (Emphasis supplied.)

In Neish v. Gannon, 198 Ill 219, 64 NE 1000, where a niece 15 years of age went to live with her aunt, at the aunt's request, the family relation was held not to prevent the implication of a promise to pay for services requested. In In re Lyons' Estate, 303 Ill App 642, 25 NE 2d 555, expressions of decedent that "he did not know how he could get along without his sister-in-law keeping house for him, and that he was 'really going to take care of her later on,' " were considered sufficient to rebut the presumption that services performed by a relative were intended to be gratuitous. It was further held that a provision for the claimant in decedent's will did not militate against her claim.

■■ In re Estate of Brumshagen, 27 Ill App2d 14, on 22, 169 NE2d 112, the court cited the following rule which is observed by the Illinois courts:

"Where no kin or family relationship exists between the parties, and one accepts and retains the

beneficial results of another's services which were rendered at his own insistence and request and which he had no reason to suppose were gratuitous, the law will imply liability for such services in such an amount as they are reasonably worth. In such a situation a claim can be established by an implied contract. Floyd v. Smith's Estate, supra. Where the plaintiff or claimant is of no kin to the deceased and is seeking to recover for services rendered by way of a claim filed against the estate, it is not necessary to prove the services were rendered under an express contract. Recovery may be had upon an implied contract. Moreen v. Carlson's Estate, 365 Ill 482, 6 NE2d 871."

In the last mentioned case it was held that the existence of a fiduciary relation did not bar recovery. A case in which the facts are similar to the situation at hand in which an implied contract to pay was found is Floyd v. Estate of Smith, 320 Ill App 171, 50 NE2d 254. See also In re Estate of Ruebush, 53 Ill App2d 54, 202 NE2d 344 on 348.

The cases of Newton v. Kunz, 37 Ill App2d 371 at 375, 185 NE2d 716 and Dewein v. Dewein, 30 Ill App2d 446, at 448, 174 NE2d 875, are distinguishable, among other reasons, upon the ground that there was no change of position of the claimant based upon the request for service.

In the present case John McWain had lived alone and had received substantial services from Florence Hoggatt, claimant. By reason of arthritis of the feet and his advanced age, he had become completely unable to take care of himself. About 14 months before his death he requested Florence Hoggatt to provide a place for him. She purchased the trailer for him, moved it on to her own property, next to her home and thereafter, constantly performed the services she had performed occasionally

before. These services were necessary and they covered all of Mr. McWain's needs. Florence Hoggatt received no corresponding benefit of being provided a place to live or board as is frequently the case where services are rendered by one relative to another. The evidence is clear that John McWain did not intend the services to go unrewarded. There is no evidence that the services were to be given gratuitously. The mere fact that there was no specific agreement as to the amount to be paid for the services, or the time of payment, would not prevent the implication of a promise to pay for necessary services requested and faithfully performed.

■ If Florence Hoggatt and John McWain were related as second cousins, such fact alone would not give rise to an inference that the services were to be performed gratuitously.

■ We think that from the time John McWain moved to the premises of Florence Hoggatt, 14 months before his death, and received care necessary for him to exist and until his death, a sufficiently definite set of circumstances existed to imply a contract to pay the reasonable value of those services. The services rendered prior to this time, while frequent, do not involve such a change of position on the part of claimant pursuant to any definite request for services as to give rise to such implication.

No reason appears why no evidence of the value of services was offered, but it is probable that the indication of the court that no sufficient foundation existed for the claim precluded the offer of such proof. An opportunity should be given to present such evidence.

The judgment of the trial court ordering the delivery of the trailer, the postal savings account and the bank account to the administrator is affirmed. The judgment of the trial court denying the claim for services performed subsequent to the time the decedent moved to the claimant's premises is reversed and the cause remanded with

directions to receive evidence as to the reasonable value of the services performed.

Affirmed in part, reversed in part, remanded with directions.

CRAVEN, P. J. and SMITH, J., concur.