. ISABELLA NEISH, Admx.

*v.*

MARGARET GANNON.

*Opinion filed October 25, 1902.*

1. MASTER AND SERVANT—*when presumption of gratuitous service is overcome.* The presumption of gratuitous service on account of family relation is overcome by proof that the claimant was taken from home by her aunt at the age of fifteen; that the aunt agreed to "do for her and see that she was recompensed for her work;" that claimant remained with her aunt for eleven years, receiving her board and clothing, and upon two occasions sums of money, which her aunt stated was part of her wages.

2. LIMITATIONS—*when payments will remove bar.* Payment by a mistress to one in her employ, of sums of money as part of her wages, with the promise to pay the rest when she was through with her property or left this world, will remove the bar of the statute, even though the unpaid balance is not fixed.

3. SAME—*promise to pay debt at promisor's death is valid.* A promise to pay another a debt at the time of the death of the promisor is a binding obligation.

4. WITNESSES—*heirs-at-law are competent witnesses to establish claim against estate.* In proving a claim against an estate, heirs-at-law of the deceased are competent witnesses upon behalf of claimant, their testimony being adverse to their own interests.

*Neish* v. *Gannon,* 98 Ill. App. 248, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of McHenry county; the Hon. C. S. DONNELLY, Judge, presiding.

D. T. SMILEY, for plaintiff in error.

C. P. BARNES, and A. B. COON, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

Defendant in error filed her claim in the county court of McHenry county against the estate of Jeannette Heaney, deceased, for $1500, for services rendered the deceased in her lifetime. The case was tried in the county court without a jury, and a judgment rendered in favor

of the claimant for $1403. On appeal to the circuit court
the case was tried before a jury, and a verdict was re-
turned in favor of claimant for the sum of $1300, upon
which judgment was rendered. An appeal was perfected
to the Appellate Court for the Second District, where
the judgment of the circuit court was affirmed, and the
record has been brought to this court by writ of error
for further review.

At the close of the plaintiff's evidence, and again at
the close of all the evidence, the plaintiff in error re-
quested the court to direct the jury to find in favor of
the defendant, which the court declined to do, and which
action of the court has been assigned as error.

The evidence introduced on behalf of the plaintiff
tended to show that in the year 1880 the claimant, a
minor, was living with her parents. The deceased was
a sister of the claimant's father. The husband of the de-
ceased died in the winter of 1880 and left her living alone
upon a tract of land containing about five acres, situated
in the village of Spring Grove. In the month of March
following, the deceased went to the home of the claim-
ant's parents and arranged for the claimant to go to her
house and stay with her. She said she would "take her
and do for her and see that she was recompensed for her
work." Pursuant to this arrangement the claimant, who
was then about fifteen years of age, went the next day
to her aunt's home and remained with her about eleven
years. While there she did housework, took care of two
cows and worked in the garden,—in fact, did any and
all kinds of work about the place in and outside of the
house, whether it was the work of a woman or a man.
At the time she went to her aunt's house the deceased
was about sixty-three years old. In the fall of 1887 the
deceased fell and hurt herself, so that she was obliged
to go about with a crutch or cane most of the time up to
the time of her death. After said injury she was con-
fined to her bed for a number of months, during which

time the claimant cared for her. In September, 1891, the
claimant was married and left the home of the deceased.
During a part of the time the claimant lived at the home
of the deceased she attended school, took music lessons,
was clothed by the deceased, and when sick the deceased
paid her doctor bills. She also made her a present of an
organ. When about eighteen years of age the claimant,
having received a certificate, desired to teach school.
The deceased said to her if she would remain with her
she would do better by her than she could do by teach-
ing school. In the year 1891 the deceased caused a deed
to be drawn by a justice of the peace, which she signed
and acknowledged, conveying to the claimant her home,
valued at about $1200. At the time the deed was made
the deceased stated to the justice of the peace that she
wanted to leave the place to the claimant to pay her for
her services while she was living with her. For some
reason which the evidence does not disclose the deed was
not delivered. The deceased stated to Joseph Peacock
that the claimant had lived with her and worked for her,
and that she calculated to pay her for her services.
About a month before the claimant was married the de-
ceased gave her $50 and stated it was a part of her wages.
In July or August, 1898, the deceased gave the claimant
$75 and said to her she would give her that to apply on
her wages, and would pay the rest when she was through
with her property or when she left this world.

It is first contended that the relation of parent and
child existed between the deceased and claimant, and
that the presumption is that the services rendered by
the claimant to the deceased were intended as a gratuity
because of such relation. It is well settled that where
one person renders services to another with the assent
and approval of the person for whom they are rendered
the law raises an implied promise to pay for the services,
but where the family relation exists such implication
does not arise from the mere rendition of the services,

and in that case it will be presumed that the services were rendered as a gratuity, on account of the mutual obligations existing between the parties growing out of the family relation.  Such presumption is, however, rebutted where the evidence establishes an express contract to pay for the services, or where, from the facts proven, it appears that at the time the services were performed both parties understood and expected that the party performing the services was to be compensated therefor, although no express contract to pay for the service is proven, in which case a contract will be raised, by implication of law, to pay for such services.  (*Miller* v. *Miller*, 16 Ill. 296; *Collar* v. *Patterson*, 137 id. 403; *Switzer* v. *Kee*, 146 id. 577; *Heffron* v. *Brown*, 155 id. 322; *Sherman* v. *Whiteside*, 190 id. 576.)  In *Miller* v. *Miller*, *supra*, on page 298 it is said: "Where one remains with a parent, or with a person standing in the relation of parent, after arriving at majority, and remains in the same apparent relation as when a minor, the presumption is that the parties do not contemplate payment of wages for services.  This presumption may be overthrown and the reverse established by proof of an express or implied contract, and the implied contract may be proven by facts and circumstances which show that both parties, at the time the services were performed, contemplated or intended pecuniary recompense, other than such as naturally arises out of the relation of parent and child."  And in *Sherman* v. *Whiteside*, *supra* (p. 579): "In the ordinary case of services rendered by one person to another with the assent and approval of the person for whom they are rendered the law raises an implied promise to pay, but where the family relation exists the implication does not arise from the mere rendition of the service, and the law will rather infer that it was rendered on account of the mutual obligations between members of the same family.  In such case, an agreement to pay for services must be established either by proof of an express contract, or of facts

from which an inference of such an agreement will arise. Such facts must justify the conclusion that the parties were dealing on the footing of contract, and that both parties expected the services to be paid for." There is ample evidence in this record tending to show that the parties were dealing with each other upon the footing of a contract and that both parties expected the services to be paid for.

It is further contended that the claim of defendant in error was barred by the Statute of Limitations, and that there was no proof offered by the claimant to take the same out of the statute. The evidence tended to show that the deceased paid $50 to defendant in error upon her wages in 1891 and $75 thereon in 1898, on both of which occasions she recognized an existing obligation remaining unpaid, which she promised to pay in the future. Such facts, if proven, were sufficient to remove the bar of the statute, although the amount remaining unpaid was not fixed. (*Schmidt* v. *Pfau*, 114 Ill. 494; *O'Hara* v. *Murphy*, 196 id. 599.) The fact that she stated she would pay the rest when she was through with her property, or when she left this world, did not rebut the presumption of a promise to pay arising from such payments, as a promise to pay another a debt at the time of the death of the promisor is a binding obligation. *Goodwin* v. *Goodwin*, 65 Ill. 497.

The court did not err in declining to take the case from the jury.

Nellie Peacock, Mary Turner and Elizabeth Ida Turner, the sisters of the claimant and heirs-at-law of the deceased, and Joseph Peacock, the husband of Nellie Peacock, who were called by the claimant, were competent witnesses in her behalf. Their testimony was adverse to their own interest. *McKay* v. *Riley*, 135 Ill. 586.

We have examined the instructions given to the jury and those refused. The instructions given, taken as a whole, state the law of the case correctly, and what

was proper in the refused instructions was contained in those given.

We find no reversible error in this record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*