N. Kenneth Hoffner and Anna Hoffner, Appellants, v. John Reinberg et al., Appellees.

Gen. No. 40,073.

14

Opinion filed June 13, 1938. Petition for rehearing stricken for impertinence June 27, 1938.

HERSHENSON & HERSHENSON and JAMES B. McKEON, both of Chicago, for appellants.

CUMMINGS & WYMAN, of Chicago, for appellee John Reinberg; AUSTIN L. WYMAN, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs brought an action for fraud and deceit against the three defendants who owned all the stock and who were the officers and directors of the Publix Realty Company, a corporation, charging that defend-

ants falsely represented that the Publix Realty Co. was solvent and financially able to construct a home for plaintiffs and that it owned the necessary building material; that plaintiffs, relying upon the promises, entered into a written contract with the corporation whereby it was to construct a home for plaintiffs for $7,550, to be paid for by plaintiffs in instalments as the work progressed; that defendants fraudulently diverted, from time to time, moneys paid by plaintiffs and converted it to their own use and falsely and fraudulently represented that such moneys were being applied in payment of the building. Kreielsheimer was not served with process and did not enter his appearance. So far as the record discloses, defendant Reinberg alone filed an answer, denying all charges of wrongdoing. December 16, 1937, the case was tried before the court without a jury; defendants were found ''guilty of wilful and wanton conduct'' and judgment was entered against them for $5,609.77. Afterward, on January 17, 1938, defendant Reinberg alone filed a motion for a new trial, and on January 31 judgment was entered which recites that, ''This cause coming on to be heard on motion of the defendants for a new trial . . . motion is allowed and a new trial awarded.

''It is THEREFORE ORDERED that the judgment and special finding of malice heretofore entered herein on Dec. 16, 1937, be vacated and set aside and this cause transferred to the assignment judge for reassignment.'' Afterward the petition of plaintiffs filed in this court for leave to appeal was allowed.

The record discloses that the Publix Realty Co. was incorporated under the laws of this State May 21, 1936, with a capital stock of $1,200 divided into 12 shares of $100 each. The three defendants owned all the stock and were the officers of the corporation; Reinberg was president and treasurer, Keller vice-president, and Kreielsheimer secretary. The company maintained an

office at 2445 Devon avenue, Chicago, and on the roof of the building there was a large sign, "Community Builders."

Reinberg, called by plaintiffs under section 60 of the Civil Practice Act, testified: "I own the Publix Realty Company. I own eight shares of stock. Kreilsheimer had two and Keller had two. At the time the corporation was formed the assets consisted of furniture and some building materials. I put in $800; not all in cash, some office fixtures and equipment. The actual cash put into the corporation amounted to $800. I don't remember whether it was $300. Keller didn't put in any cash, but included his services. Kreielsheimer didn't put any cash in."

The evidence further shows that plaintiffs owned a lot in Chicago on which they desired to build a home, and after "shopping around" they on March 6, 1937, entered into a written contract with the Publix Realty Company, the contract being signed on behalf of the Realty Company by John Reinberg, president, whereby the Realty company agreed to build a 7-room brick residence for plaintiffs for $7,550, to furnish all material and complete the building free of liens by June 1, 1937. The contract provided that plaintiffs make payments as follows: $250 upon the signing of the contract; $750 when concrete foundation is in; $800 when first floor joists are placed; $1,500 when ceiling joists are placed; $1,500 when "roof is boarded"; $1,000 when plastering is finished; $1,000 when the "bulk of trim" is erected; and the balance of the contract price—$750—when the work is completed; that the Realty Company proceeded to construct the building and plaintiffs made payments as specified; that when the payments were made the Realty Company gave plaintiffs waivers of liens; that plaintiffs had made payments aggregating $6,800; that shortly thereafter the Publix Realty Company was put into bankruptcy; the building was incomplete and a

great many mechanic's liens were presented and some filed; that subcontractors made claims amounting to more than $5,000; that plaintiffs were compelled to hire other persons to complete the building and settle with a number of claimants, so that the building cost them $5,609.77 more than the contract price. It was for this excess cost that the court entered judgment but which he afterward set aside. There is further evidence to the effect that during the time the Publix Realty Company was in business it constructed about 15 buildings; that at the time it was put into bankruptcy the Realty Company was constructing buildings for three or four other persons, which were not completed, and claims for mechanic's liens similar to the claims involved in the instant case were presented.

Reinberg further testified that the Mortar Supplies Company was a corporation, of which he was president; that the other officers were his wife and John Jarmuth, his father-in-law; that he served a notice of mechanic's lien for materials furnished by the Mortar Company used in plaintiffs' building, for $1,027.29; and the evidence shows he was threatening to foreclose this lien at about the time of the bankruptcy. He testified, ''I knew that the demand was for $1,027.29 together with interest. I knew, as president of Publix Realty Company that Publix Realty Company had received the money and had not paid it to the Mortar Supplies Company.''

Four exhibits are in the record dated June 3, 1937, entitled, ''Waiver of lien materials or labor,'' addressed to ''Whom it may concern,'' in which it is recited, ''Whereas, I, the undersigned, John Reinberg, doing business as Mortar Supplies Co., have been employed by the Publix Realty Co. to furnish cement for concrete walks, garage and basement'' for plaintiffs' building, and in consideration of one dollar he waived and released all claims of lien against the premises.

The other three contain similar recitations but for different work on the same building.

Reinberg further testified that "the Mortar Supplies Company is at my residence. It is a yard"; that he never owned more than one share in the Mortar Company; that his wife owned one share and Jarmuth, his father-in-law, held the balance of the stock, $24,000.

On the trial of the case, and in Reinberg's written motion for a new trial, he contended that plaintiffs were guilty of negligence because they did not require affidavits from the contractor as to the amounts due subcontractors, and therefore could not recover. This contention is now abandoned by counsel for Reinberg. Counsel now admits that Reinberg cannot set up the claimed negligence on the part of plaintiffs as a defense against any fraud that may have been committed by him. Obviously this is the law. *Leonard v. Springer,* 197 Ill. 532; *Linington v. Strong,* 107 Ill. 295.

Complaint is also made that the proof made by plaintiffs was insufficient to warrant the finding that defendants were liable for $5,609.77, as found by the court. The point was in no way saved. When the evidence was offered by plaintiffs on the trial, the only objection made by counsel who then represented Reinberg (but who does not represent him in this court) was that the exhibits offered by plaintiffs showed the several amounts of money paid, and that the claims for mechanic's liens made by material men were self-serving and covered the same information contained in the documents already in evidence; and further, counsel for Reinberg said, "If it is for the purpose of showing amount of the claims and to assist counsel, I will withdraw my objection." There was no objection on the trial that the several items were not correct. Plaintiffs were entitled, for $7,550, to a building complete and free from all claims, as the contract provided; since this was not done, defendants are liable for the amount

plaintiffs were compelled to pay over and above the contract price.

Counsel for Reinberg further contends that the court allowed a new trial probably because the evidence was wholly insufficient to show that Reinberg or either of the other two defendants was guilty of any fraud or misrepresentation. Plaintiffs' testimony is to the effect that at and prior to the execution of the contract for the construction of the building, defendants represented that the Publix Realty Company had the necessary materials to construct the building, and upon payment of the contract price would turn it over to plaintiffs complete and free and clear of all liens. Counsel contend this evidence was contradicted by Reinberg and by Keller. We think the evidence was clearly sufficient to warrant the trial judge in finding, as he did, in favor of plaintiffs on this question. There can be no doubt that Reinberg controlled the Publix Realty Company and owned and controlled, so far as this record is concerned, the Mortar Supplies Company. None of the defendants offered any evidence that the $6,800 paid by plaintiffs went toward the payment for the building. In fact some of the evidence shows that Reinberg took part of this money to pay himself a salary. He, as the person who owned and controlled the Mortar Supplies Company, threatened to file suit to foreclose a lien of that concern for $1,027.29, all of which conduct throws light on the question of how much weight should be given to defendants' testimony that they did not represent that the Publix Realty Co. was solvent and had the material on hand with which to construct plaintiffs' building. Furthermore, the uncontradicted evidence is that Reinberg fraudulently diverted the money as it was paid in instalments by plaintiffs and converted some of it to his own use, and that he falsely represented to plaintiffs at the time of such payments that the money was being applied toward the cost of the

building, by issuing waivers of liens. It was only after the Publix Realty Company was in bankruptcy that the true state of affairs was disclosed. In these circumstances, we think it was a clear abuse of discretion for the trial judge to set aside his finding and judgment and award a new trial.

The judgment of the circuit court of Cook county awarding a new trial is reversed and the cause is remanded with directions to reinstate the judgment of December 16, 1937. *Mastin v. National Tea Co.*, 278 Ill. App. 60; *Norton v. Tucker*, 290 Ill. App. 606 (Abst.).

*Reversed and remanded with directions.*

McSurely and Matchett, JJ., concur.