In re Estate of Matthew B. Lyons, Deceased.
Mary Wyley Scurry, Appellant, v. Winifred Sheehan,
as Administratrix with the Will Annexed of the
Estate of Matthew B. Lyons, Deceased, Appellee.

Gen. No. 40,938.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed February 14, 1940.

Joseph F. Elward, of Chicago, for appellant; Raymond F. McNally, Jr., of Chicago, of counsel.

Patrick J. Allman, of Chicago, for appellee.

Mr. Justice Hebel delivered the opinion of the court.

The plaintiff petitioned this court for leave to appeal from an order granting a new trial, such petition

being filed under and by virtue of section 77 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1937, ch. 110, par. 201 [Jones Ill. Stats. Ann. 104.077]) and Rule 40 of the Supreme Court of Illinois, and the appeal was allowed by this court.

This action was commenced in the probate court of Cook county upon the plaintiff's claim against the defendant, administratrix, on account of housekeeper and nursing services rendered by the plaintiff for the deceased from February 17, 1932 to January, 1938. Upon appeal to the circuit court of Cook county, a trial *de novo* was had with a jury. A motion for a directed verdict was made by the defendant at the close of all the evidence, and the court reserved its ruling. The jury returned a verdict which allowed the plaintiff's claim for $2,500. The defendant made motions for judgment notwithstanding the verdict and for a new trial. Upon argument of the motions the trial court denied the motion for a directed verdict made at the close of all the evidence, and denied the motion for judgment notwithstanding the verdict. Subsequently, the trial court allowed the defendant's motion for a new trial.

The plaintiff's contention is that the evidence adduced in behalf of her, although related as sister-in-law of the deceased, was sufficient in law to rebut the presumption that her services were intended to be gratuitous, and she further suggests that counsel for the defendant will not dispute the proposition that the Illinois courts consistently have held that where housekeeping services are rendered by one who stands in the family relation with the deceased, and who then acts to charge the deceased estate with the value of the services, the presumption is that the services were intended to be gratuitous. This presumption, however, may be overcome by proof of facts or circumstances which show that the deceased intended that compensation would be paid and that the claimant intended to

receive compensation, both intentions existing at the time the services were rendered.

The defendant's reply to this contention is that the burden is on the plaintiff to prove her case by a preponderance of the evidence, and in addition overcome the presumption that the services were rendered gratuitously, because of the family relationship existing between the plaintiff and the deceased. To overcome this presumption it was necessary for the plaintiff to prove that when the services were rendered she expected to receive payment and the deceased to make payment.

Therefore, under the issues involved in this litigation it was incumbent upon the plaintiff to prove at the trial, and the plaintiff maintains now that it has been proved, that the evidence shows that the services rendered by her were intended by her and by the deceased to be paid for by him. It does appear from the evidence which was offered by the plaintiff that the services were performed by her from 1932 until the death of Mr. Lyons on January 17, 1938. It also appears from the evidence that all of the witnesses, except Mr. Nicholsen, had been in the home of the deceased, and had actually seen the plaintiff perform the services as housekeeper.

The testimony of Mr. Blatt and Mr. Hellman, witnesses who appeared at the trial, tends to show that both witnesses had heard the deceased say on numerous occasions during the last five or six years of his lifetime that he did not know how he could get along without his sister-in-law keeping house for him, and that he was "really going to take care of her later on" on account of the work she had done for him, and Mr. Hellman further testified that the deceased told him that he was not paying the plaintiff anything at the time, but that the payment would come later, and that he definitely intended to "take care of her" for the rest of her life, on account of the work she had done for him. It further appears from the evidence of Mr.

Hellman that the deceased had told his sister-in-law, the plaintiff, that he intended to take care of her on account of the work she had been doing for him, and that the deceased had made this remark to the witnesses as often as once a week from the spring of 1933 until a few months before his death in January, 1938.

A further witness for the plaintiff, Carl W. Myland, who had been working in the same department as the deceased with the Pullman Company, testified that when he was working with the deceased he had numerous conversations in regard to the plaintiff, and the deceased had repeatedly stated that he had a wonderful housekeeper, and that he, the witness, had been in the home of the deceased and had seen the plaintiff working in the kitchen and taking care of him when he was sick.

The evidence of Mr. Nicholsen, who testified he had a conversation with Mr. Lyon when he came back to work after an illness in December, 1937, is to the effect that at this time the deceased told the witness: ''I don't know how I could have got along without my sister-in-law,'' that as a nurse she certainly was a wizard. He said that he had nothing to worry about, and certainly not in the future. So it does not appear that there was any controversy regarding the credibility of the witnesses or as to the evidence that was given before the jury. The sole question seems to be whether the evidence was sufficient to establish that the plaintiff was to be paid and that she would receive remuneration for her services. In the determination of this question it is best to consider the cases in which the courts have passed upon a like question.

In the case of *Switzer v. Kee,* 146 Ill. 577, a son was seeking to recover compensation by an allowance in the probate court in the estate of his deceased mother for services rendered, and upon an appeal in the circuit court the question arose as to whether he being the son was entitled to compensation, and one of the questions involved in the case was whether the court erred

in refusing to give an instruction, which was as follows:

" 'Where a child lives with a parent, or a parent with the child, the relationship between the parties is so intimate that the law does not imply a contract to pay money for support or services. Unless it be shown that there is an express contract to pay for such support and services, a recovery therefor can not be had by one of the parties against the other. In the absence of an express agreement the law indulges the generous presumption, that what is done for each other by parties thus nearly related is done gratuitously, and as the prompting of natural affection.' " The court, in passing upon this instruction upon which the court commented that there might have been an implied contract, said: "But, as we have seen, even in such case an implied contract may be established by proof of facts and circumstances showing that it was the intention of the parties that payment should be made for the support or services furnished." and the court held that there was no error in refusing to give this instruction.

From the authorities it would seem to be the rule that an implied contract in a case of the kind we have before us, may be established by the facts and circumstances showing it was the intention of the parties that payment should be made for the services.

Also in the case of *Neish v. Gannon,* 198 Ill. 219, where it appears the claim was filed by a niece against her aunt's estate and was for housework, and where the deceased had actually conveyed to the claimant a lot which was to pay her for her services while she lived with her. The estate's defense was that the services were gratuitous. The Supreme Court in that case said: "Such presumption is, however, rebutted where the evidence establishes an express contract to pay for the services, or where, from the facts proven, it appears that at the time the services were performed both parties understood and expected that the party

performing the services was to be compensated there-
for, although no express contract to pay for the serv-
ice is proven, in which case a contract will be raised,
by implication of law, to pay for such services.''

In the case of *Heffron v. Brown,* 155 Ill. 322, the
court in the opinion held that an implied contract may
be established by the facts and circumstances sur-
rounding the case, and this rule was approved in *Miller
v. Miller,* 16 Ill. 296, and by this court in *Fruitt v. An-
derson,* 12 Ill. App. 421. So, when we come to consider
the question involved, it is necessary to determine
whether the court was justified in granting a new trial
under the facts and circumstances as they appear from
the record and whether this action was within the dis-
cretion of the court.

It does not appear that any erroneous decisions of
the court were made during the trial of the case, or
that the instructions were erroneous. So, as stated be-
fore, it would seem to depend upon the facts and the
rules which apply in actions of this kind, whether by
this act of the court in granting a new trial the court
was acting within its discretion.

From the case of *Leahy v. Morris,* 289 Ill. App. 99,
it appears that the defendant filed a motion for a di-
rected verdict at the close of the plaintiff's case; also
a motion for a directed verdict at the close of all the
evidence, and a motion for a judgment *non obstante
veredicto,* each of which motions was denied. Then
the defendant filed a motion for a new trial, stressing
the point that the verdict was against the manifest
weight of the evidence, and the trial court allowed this
motion. Upon the question involved the court said:

''This having been left as a question of fact for the
jury the court must abide by the jury's findings on
that question.

''. . .

''There is no contention in this case except that the
verdict was against the manifest weight of the evi-
dence. Our courts have so often laid down the doctrine

that verdicts will not be disturbed by courts unless they are in fact against the manifest weight of the evidence that it seems idle to cite those authorities again here. On this the case was submitted to the jury, properly instructed. The jury found the facts as juries must in all cases submitted to them, even though the line of demarkation between the conclusions which may be drawn from consideration of two sets of facts may be somewhat indefinite.''

Then again in the case of *Norton v. Tucker,* 290 Ill. App. 606 (Abst.), we said:

''There is no claim, but that the jury was fully and fairly instructed. From the record before us, we conclude that there is nothing involved but questions of fact, that the verdict is not contrary to the manifest weight of the evidence, and we are, therefore, of the opinion that the trial court was in error in granting a new trial.'' See also *Ulbricht v. Western Coach Lines,* 289 Ill. App. 164, and *Hoffner v. Reinberg,* 296 Ill. App. 13.

In commenting upon this question in the case of *McNeill v. Harrison & Sons, Inc.,* 286 Ill. App. 120, this court said:

''If it were permissible for a trial judge on a motion *non obstante veredicto* to weigh the evidence and enter a judgment according to his opinion as to wherein lies the greater weight of the evidence, then the right to a trial by a jury would be done away with and the judgment of the court substituted therefor. It is only where there is no evidence as a matter of law to sustain either a plaintiff's or a defendant's claim that a judgment may be rendered notwithstanding the verdict.

''In the instant case the evidence was conflicting and the court should not have substituted its judgment as to the weight of the evidence in place of the verdict of the jury.''

This language was quoted with approval by this court in *Wolever v. Curtiss Candy Co.,* 293 Ill. App. 586.

We are of the opinion that under the facts there was sufficient evidence to establish the plaintiff's case, and that the court erred in granting a new trial.

While other questions have been called to our attention, we think we have passed upon the important questions and are satisfied that the plaintiff has established her right to be paid for her services and that that was the intention of the deceased in his lifetime.

While there is in this record the last will and testament of the deceased, which was offered in evidence by the defendant, the will provides for a trust, of which the plaintiff was to receive one-fifth of the income for and during her natural life. The net assets of the estate amount to $5,710.75, and it is from this amount that she is to receive one-fifth of the income, which would amount to approximately $50 each year. This, however, does not militate against the claim of the plaintiff if she is entitled to compensation for services, and as we have found from the facts in the record, the court erred in granting a new trial, and the order for a new trial is reversed and judgment entered in this court on the verdict of the jury for $2,500.

*Order reversed and judgment entered here.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.