In re Estate of James W. Moore, Deceased.
George L. W. Moore and Clara Moore, Appellees, v. .Bridget H. Sullivan, Administratrix De Bonis Non of Estate of James W. Moore, Deceased, Appellant.

Gen. No. 41,413.

Opinion filed May 19, 1941.

DAVID J. A. HAYES, of Chicago, for appellant.

ROSENBLATT, SCHATZ, MALKUS & BRODSKY and WAR-
DEN & BECKER, both of Chicago, for appellees; H. BUR-
TON SCHATZ, BENJAMIN M. BECKER and EDWARD WAR-
DEN, for counsel.

MR. JUSTICE MATCHETT delivered the opinion of the
court.

The decedent, James W. Moore, then about 81 years
of age, died intestate at Chicago, Illinois, June 29,
1937, leaving him surviving two brothers and a sister,
his only heirs at law and next of kin. Claimants
(George L. W. Moore and Clara Moore) are not re-
lated by blood. George is a stepson and Clara is the
wife of George. They filed a claim in the probate
court of Cook county consisting of two items. First,
for food, laundry, lodging, rent and care at $18 per
week from December 10, 1931, to January 21, 1934,
$1,980; second for food, laundry, lodging, rent, care and
special nursing service at $25 per week from January
29, 1934, to March 23, 1935, 61 weeks, $1,525; a total
of $3,505 on which were credited amounts received on
account from December 10, 1931, to August 10, 1932,
$200, leaving a balance of $3,305, which their verified

statement alleged to be just and unpaid after allowing all just credits. The claim was disallowed in the probate court. Appeal was taken to the circuit court, where upon trial without a jury, on April 25, 1940, a finding was entered for the claimants in the sum of $2,640, with judgment. The estate has appealed to this court.

The evidence shows Mrs. James W. Moore (wife of the decedent) died December 10, 1931. On that date he went to live at the home of claimants, 1331 North Lorel avenue. He owned a two-flat building at 3224 West Flournoy street rented to tenants. He was and for many years had been employed by the Surface Lines as an investigator. He continued to work until January 15, 1934, when his health failed somewhat. He was then drawing a salary of $153 per month. The inventory of his estate discloses the two-flat building and two bank accounts. In one the balance was $342.79, in the other $3,421.25. The instant claim and another for funeral expenses are the only demands filed against his estate.

While claimants were not related by blood to decedent George Moore is his stepson, and decedent was known to the family as "Grandfather." He left no children. He appears to have been frugal and honest. When he first came to live with claimants they occupied an apartment of four rooms in a building of which George Moore was receiver. There were four in the George Moore family—the father, the mother, a daughter and a son. About two weeks after decedent came more space was found necessary and another apartment was taken on the floor below.

The claimants were incompetent to testify. Evidence was given in behalf of their demand by their daughter Clara (now Mrs. Wilson); the daughter's husband, George Wilson, who was at that time courting his wife to be; the son, George, Jr., then seventeen years of age, and James Cremaldi, who was a near neighbor of

James W. Moore on Flournoy street before and after he went to live with claimants.

The evidence is to the effect that at the funeral home on December 10, 1931, "Grandpa" said to Mrs. Moore, "Love, if you will take me with you, I will give you everything I have got"; that they took him with them into the four-room apartment and after about two weeks, when it became too crowded, took another apartment downstairs. Mrs. Wilson helped the mother, who was unable to care for decedent herself. Mrs. Moore cooked special meals for him and took care of his laundry. Part of the time he did not have control of his physical faculties and was confined to bed. The evidence shows a number of times decedent said he would pay claimants well for their trouble.

Mrs. Wilson and her husband testify to several payments made by decedent on Saturday evenings after dinner, when the family was present. Mrs. Wilson says the decedent was somewhat odd. George Wilson (the husband) corroborates the testimony of his wife and says that decedent said claimants should be rewarded for what they were doing for him.

Moore, Jr. says that on a Saturday night in the fall of 1932, deceased said, " 'I am very grateful for the care that George'—he always referred to my father as George—'that George and Clara have given me.' He says, 'It is not my desire nor intention to go along without reimbursing them.' He said, 'I want them to be paid for everything that is done for me.' " He recalled a Saturday night when deceased put $20 in front of George Moore and said, "Here's your pay." The witness was sitting at the side of the table and he says "Grandfather" was sitting at the head of the table and said, "Here's your pay for the week." The witness said this happened three or four times, always on a Saturday night.

James Cremaldi, a West Flournoy street neighbor, testified to two conversations with the deceased. He

said just before deceased went to live with claimants he told Mr. Cremaldi he was going to live with Mrs. Moore, would have a good home, would like it there, and that he would have to pay board and would be satisfied with paying $20 per week. The second conversation was after decedent came back from the Moore's to live on Flournoy street. He told Cremaldi in response to his question as to why decedent was coming back there, that he liked the home he was in but figured he had to pay board there and he had money coming from tenants and would live with them and "square off the rent."

There is no written evidence tending to prove any contract nor proof that claimants rendered any bill or made any demand.

The estate has cited many authorities to the proposition that a claim of this kind is viewed with suspicion and services rendered to members of a family or household are presumed to be gratuitous. This is the law although the presumption is rebuttable. We are not unmindful of the law as stated in the many cases cited from this and other jurisdictions. However, the uncontradicted evidence here is to the effect that the Moores cared for, furnished a home and maintenance to the deceased during the several years he lived with them. He was able to pay; he wished to pay. We hold the evidence is sufficient to show an agreement to that effect.

The difficulty in deciding this case has not arisen from any uncertainty about the existence of an agreement to pay. Our difficulty has been to determine whether, as a matter of fact, payment was made.

The estate says the claim is barred by laches and argues, citing *Trego v. Estate of Cunningham,* 267 Ill. 367, and *In re Estate of Holsman v. Holsman,* 295 Ill. App. 392, that the probate court has the power and jurisdiction of a court of chancery. The cases cited are not applicable.

The real question it seems to this court is whether lack of proof of a demand with lapse of time and other facts here appearing create a presumption of payment. Apparently this was not in the mind of the parties upon the trial and there is evidence available which was not presented. We understand a recent interpretation by the Supreme Court of § 92, sub. 1 (f) of the Civil Practice Act (Smith-Hurd Ann. Stats., ch. 110, par. 216, p. 420 [Jones Ill. Stats. Ann. 104.092]), holds courts of review are without power in the first instance to have such evidence taken. There is a line of cases decided by the Pennsylvania courts holding that in claims for nursing services, etc., there is a rule presuming payment. 24 C. J., p. 278 says: "Where a claim for services or board is first made after the decease of the alleged debtor, the presumption obtains that payment was made. . . ." *In re Kelly's Estate,* 6 Pa. Dist. R. 685; *In re Estate of Cummisky,* 224 Pa. 509, 73 Atl. 916, 132 Am. St. Rep. 787; *Flaccus v. Wood,* 260 Pa. 161, 103 Atl. 549. The question does not seem to have been raised in this State in connection with such cases. *Chapman v. Barnes,* 29 Ill. App. 184; *Hudson v. Hudson,* 218 Ill. App. 559; *Crawley v. Howe,* 223 Ill. App. 394; *In re Estate of Lyons,* 303 Ill. App. 642, 644, 646; *Moreen v. Estate of Carlson,* 365 Ill. 482, 486, 493.

In our examination of the record it also appears that evidence offered tending to show the reasonable value of services and support rendered by claimants to the deceased was not admitted when offered. We hold it should have been. Under the powers granted this court under § 92 sub. 1 (f), the judgment will be reversed and the cause remanded for the purpose of taking additional evidence on these points.

*Reversed and remanded.*

O'CONNOR, P. J., and McSURELY, J., concur.