Estate of Alfred A. Franke, Deceased.

Louis Dardano, Conservator of the Estate of Mary Damico, Incompetent, Claimant-Appellee, Cross-Appellant, v. The First National Bank of Chicago, Executor of the Will of Alfred A. Franke, Deceased, Respondent-Appellant, Cross-Appellee.

Gen. No. 53,328.

First District, Second Division.

April 21, 1970.

Mitchell and Russell, of Chicago (Thomas J. Russell, William H. Kelly, Jr., of counsel), for respondent-appellant.

Posanski, Johannsen, Krohn & Jacobs, of Chicago, for appellee.

## ON REHEARING

MR. JUSTICE BURKE delivered the opinion of the court.

This appeal arose out of a claim filed by Mary Damico in the amount of $81,973, by which she sought to impose a constructive trust against the estate of the decedent, Alfred A. Franke, on the ground that the decedent held and invested her income which she had allegedly earned as decedent's housekeeper over a number of years. The trial court allowed the claim in the amount of $28,080, representing compensation of $20 per week for her services from 1939 to the date of the decedent's death, to be paid in due course of administration. The court specifically found that the claimant failed to prove the existence of a constructive trust. The executor appeals from the order awarding $28,080 to the claimant, and she has cross-appealed from the determination that no constructive trust had been established.

■■■■■■■■■

After the claim had been filed and prior to the trial of this matter, the incompetency of Mary Damico, on the ground of "a severe case of senility," was suggested of record. Louis Dardano, the nephew of Mary Damico, was appointed conservator of her person and estate, and was substituted as claimant. For convenience, Mary Damico shall hereinafter be referred to as "claimant" and Louis Dardano as "conservator."

Decedent died in Chicago on November 5, 1966. At the time of his death he was the owner of a rooming house on North Winthrop Avenue in the city and occupied the first floor of the building as his residence. Claimant also resided in the apartment and performed housekeeping chores for decedent in that building and in several other rooming houses decedent had owned.

A petition to admit the decedent's will to probate was filed in December 1966. Proof of will was taken by the trial court on February 17, 1967, and the trial judge initialed the order form admitting the will to probate "O.K. 2–17–67 H.J.K." next to the names of the two witnesses who testified at the hearing. The order admitting the will to probate and the order appointing the executor were stamp dated February 27, 1967, and filed with the Clerk of the Circuit Court on the same day.

On November 17, 1967, the executor presented a petition alleging that a clerical error had been committed in the dating of the order admitting the will to probate and the order appointing the executor, and requesting that an order be entered nunc pro tunc as of February 17, 1967, that these orders were in fact entered on February 17, 1967, rather than the February 27th date appearing on the orders. The court allowed the petition and entered the nunc pro tunc order.

Claimant filed the instant claim on November 24, 1967, seeking to impress a constructive trust on the estate, on the theory that she had earned $20 per week as

housekeeper for the decedent for the period from 1928 until the death of the decedent, but that the decedent had withheld the earnings from her and invested the same for her benefit. On December 14, 1967, claimant moved for the vacation of the November 17th nunc pro tunc order. The motion was sustained over objection of the executor and an order was entered on January 8, 1968, vacating the nunc pro tunc order.

At the hearing on the claim, John P. Corcoran, a real estate broker who had known decedent since 1939, testified that claimant worked for the decedent as his housekeeper in the six rooming houses the decedent had owned over the years. The witness stated that the decedent did not tell him what financial arrangements the decedent and the claimant had; he testified that the decedent stated to him on at least 50 occasions that he was investing claimant's money for her, but that the decedent did not tell him how much money was being invested. Decedent told the witness that he was "making money for [claimant] and investing her money."

Frank Lukasik, a building contractor, testified that he was employed by decedent in 1964 and 1965 to correct some building violations on the decedent's rooming house. Lukasik testified that while negotiating the repairs contract he was continuously reassured by the decedent that decedent had sufficient funds to pay for the work. The witness testified that decedent boasted about his prowess and successes in the stock market. He also testified that the decedent told him he was investing over $1,000 per year for claimant, but the decedent did not say whether it was her wages or salary being invested. Lukasik testified that decedent told him that the reason why he was handling all of claimant's financial affairs and "investing her money" was because claimant was unable to handle such matters herself. The witness further testified that he observed claimant

performing general household chores in decedent's rooming house.

Mrs. Frances Dardano, the wife of the conservator, testified over objection that she had known the decedent and the claimant since 1948 or 1949 when Mrs. Dardano and her husband were married. She testified that she had a conversation with the decedent in 1949 concerning the claimant's employment as decedent's housekeeper, and decedent told Mrs. Dardano that he was paying claimant $20 per week for her services but that he was withholding the money from her and investing it for her because she was unable to manage her own financial affairs. Mrs. Dardano testified that decedent "always handled [claimant's] affairs."

The trial court found that no constructive trust had been established by the evidence. The court also found that claimant did work for the decedent as his housekeeper from 1939 until the decedent's death, and further observed that "the evidence indicates that $20.00 a week was the amount that [claimant] was to receive, and of course, that amount is less, if anything, than a reasonable amount for services such as she was rendering."

█ The executor first maintains that the trial court erred in vacating its November 17, 1967 nunc pro tunc order which changed the dates of the orders admitting the will to probate and appointing the executor, from February 27, 1967, to February 17, 1967. It is argued that since the order appointing the executor was actually entered on February 17th, the claim herein, filed November 24, 1967, was not filed within the nine-month statutory period set for the filing of claims in decedents' estates, then in effect. (See Ill Rev Stats 1965, c 3, par 204.)

It does not appear from the record that the order appointing the executor was presented to or acted on by the trial court on February 17, 1967, the day the court

heard the proof of the decedent's will. Both the order admitting the will to probate and the order appointing the executor were filed with the Clerk of the Circuit Court on February 27, 1967, which is also the court's order entry date stamped on both orders. The trial judge who entered, and later vacated, the nunc pro tunc order was not the same judge who heard the testimony in the proof of the decedent's will and who also entered the orders admitting the will to probate and appointing the executor.

The order appointing the executor bore the date of February 27, 1967. Under this state of the record the last day for the filing of claims against the decedent's estate would have been November 27, 1967. The order remained spread of record as such until November 17, 1967, the day the executor filed its petition for the nunc pro tunc order to change the date of the order appointing the executor to February 17, 1967; November 17, 1967 was also the last day the executor contends that claims could have been filed against the estate. An order such as that originally entered by the court, changing the date of entry of the order appointing the executor, would have worked a serious disadvantage against parties such as claimant here who had theretofore placed reliance on the February 27th date as commencing the nine month period within which their claims had to be filed. The trial court properly vacated its nunc pro tunc order entered November 17, 1967.

The executor next contends that the trial court improperly allowed the testimony of Mrs. Frances Dardano into evidence, inasmuch as she was the wife of a party in interest and therefore barred as a witness by Section 2 of the Evidence Act. (Ill Rev Stats 1967, c 51, par 2; and citing Peters v. Peters, 376 Ill 237, 33 NE2d 425.) The executor suggests that Louis Dardano was a party in interest in two respects, first, in his capacity as conservator of the claimant's estate and, secondly, in his

30

capacity as the claimant's only living relative and prospective heir.

■ Louis Dardano would not have been incompetent to testify on the ground that he is the sole surviving prospective heir of the claimant. Prospective heirs of parties or of persons interested in the outcome of the proceeding do not, for that reason alone, have such an interest in the outcome of the proceeding as to disqualify them as witnesses therein. Ackman v. Potter, 239 Ill 578, 88 NE 231.

However, Louis Dardano did have a financial interest in the outcome of this proceeding such as would bar him, and consequently his wife, from testifying. It is therefore unnecessary to discuss whether his status as a party to the action, per se, would have disqualified him as a witness.

In Hays v. Illinois Industrial Home for Blind, 12 Ill 2d 625, 147 NE2d 287, the executor of the decedent's estate was permitted, over objection, to testify as to conversations had with the decedent; the Supreme Court observed, at page 630, that the executor "was not an incompetent witness at any rate, since he would not gain or lose as the direct result of this suit. (Citing cases.) He is merely a stakeholder standing ready and willing to begin distribution in accordance with the court's decree, *his* (sic) *fees will not be affected by the outcome of this action.*" (Emphasis supplied.) In Jones v. Abbott, 235 Ill 220, 85 NE 279, on the other hand, the court held, at page 223, that where the executor will gain a commission from the sale of property as a direct result of the proceeding, he was not competent as a witness therein. Finally, the Probate Act provides that a conservator shall be allowed "reasonable compensation" for his services. Ill Rev Stats 1967, c 3, par 336.

■ While a conservator will normally be entitled to the same fee regardless of the outcome of the proceeding in which he is a party, the sole asset in the estate of

31

Mary Damico, as admitted by the parties at trial, is the instant claim against decedent's estate; consequently, the conservator will either receive compensation for his services, or he will not, depending on the outcome of this litigation. Since Louis Dardano does have a direct interest in the outcome of this litigation, neither he nor his wife is competent to testify as to dealings with the decedent during his lifetime.

The executor next contends that the record is devoid of evidence establishing an amount due claimant for services rendered to the decedent. James Corcoran testified that he had known the decedent since 1939, that he had business and social dealings with decedent until decedent's death, and that claimant worked as housekeeper for decedent in decedent's several rooming houses during the entire period he had known decedent. Decedent told Corcoran that he was investing claimant's money for her, that he made money for her, and that he managed all of her financial affairs.

Frank Lukasik testified that he had business dealings with the decedent in 1964 and 1965, that decedent told him that he was investing over $1,000 per year for the claimant, and that he was handling all of claimant's financial affairs because she was unable to do so herself.

As noted above, the trial court was aware of the interest which the conservator had in the outcome of this action and he should not have considered the testimony given by Mrs. Frances Dardano. While there was evidence adduced supporting the claim of Mary Damico, apart from the testimony of Mrs. Dardano, it is difficult to determine how much weight the trial judge gave to that testimony in arriving at his findings and in arriving at the amount of the judgment rendered for the claimant. The order must therefore be reversed and the cause remanded, and if there is to be a retrial of the cause, the testimony of Mrs. Frances Dardano may not be considered by the trier of fact should Louis Dardano continue

32

to be conservator of the estate of Mary Damico, Incompetent.

A final point raised, involving the statute of limitations, must be considered in the event there is a retrial of this matter.

■ The executor maintains that the Damico claim is barred by the five-year statute of limitations, inasmuch as her hiring was a hiring by the year. Generally, where a person is employed under a general agreement which fixes no term of service, and continues in such employment for a long period of time, the hiring will be treated as a hiring by the year; the statute of limitations will ordinarily bar a claim for all services rendered more than five years immediately preceding the commencement of the action, unless there is evidence to take the case out of the operation of the statute. Miller v. Cinnamon, 168 Ill 447, 452, 48 NE 45; Freeman v. Freeman, 65 Ill 106.

■ While we are in agreement with the above-stated rule, we are here faced with evidence which takes this claim out of the operation of the statute. The decedent continuously stated that he was investing claimant's wages for her since she was unable to handle her own financial affairs. Consequently, claimant had no way of knowing, until the death of the decedent, that he was not in fact doing what he said he was doing, at which time it was learned that nothing had been invested specifically for her benefit. Under these unusual circumstances the statute of limitations did not commence to run on the Damico claim until the death of the decedent. Claimant is therefore entitled to recover for services from the inception of the peculiar relationship between deceased and claimant.

■■ Claimant contends on her cross-appeal that the trial court was in error in finding that her evidence did not establish a constructive trust against the funds that decedent had been withholding from her and investing for her. A constructive trust must be established by clear

and convincing evidence, among which must be evidence of a traceable and identifiable property or fund against which the trust may attach. Moore v. Taylor, 251 Ill 468, 472–473, 96 NE 229; see also Wood v. Armstrong, 401 Ill 111, 116–118, 81 NE2d 468. The record in the instant case reveals no evidence of any particular property or fund in the decedent's estate which can be pointed to as having been set aside or developed by the decedent for the claimant. The trial court properly held that claimant's evidence did not establish a constructive trust as to any part of the decedent's estate.

For these reasons the order is reversed and the cause is remanded with directions for further proceedings not inconsistent with these views.

Order reversed and cause remanded with directions.

McCORMICK, P. J. and LYONS, J., concur.