*In re* ESTATE OF ELMER E .WHITE, Deceased—(EVA R. RUCKER, Claimant-Appellee, Cross-Appellant, *v.* ROBERT J. WHITE, Exr. of the Estate of Elmer E. White, Deceased, Defendant-Appellant, Cross-Appellee.)

(No. 73-83; ▮▮▮▮▮▮▮)

Third District—November 9, 1973.

Fort & Fort, of Stronghurst, (Ronald Henson, of counsel,) for appellant.

Stanley L. Tucker, of Carthage, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This action was brought by the claimant Eva R. Rucker, who filed a claim in the estate of E. E. White, deceased, for housekeeping services rendered the decedent for the five year period immediately preceding

his death. The claim recited that compensation was due for her services at the rate of $2,000 per year. After a hearing, without a jury, the Circuit Court of Henderson County allowed the claim in the amount of $6500. The executor appeals from the judgment and the claimant has cross-appealed.

The executor contends, (1) that claimant did not prove a right to recover for services rendered the decedent. (2) that the trial court ruled incorrectly on certain objections, and, (3) that there was no basis in the evidence for the trial court's judgment as to the reasonable value of claimant's services.

The claimant on her cross-appeal contends that she proved her claim in amount of $13,000 and that the court should have allowed the claim in the amount she proved.

E. E. White and his wife were residents of Stronghurst, Illinois. In 1957 the wife died and he constructed a new home on a farm he owned in Henderson County. He and Harry and Eva Rucker moved into the new house. The claimant Eva Rucker was married to Harry Rucker who was a brother of the deceased Mrs. E. E. White. The three people lived together until 1961 when Harry Rucker died. After the death of her husband Mrs. Rucker continued to live in the home and remained there through E. E. White's death in 1972.

At all times the claimant performed the usual household duties, such as daily house cleaning and laundry. She prepared the meals, which were always tastefully prepared and in keeping with a diabetic condition which Mr. White had long had from prior to the death of his wife.

Although Mr. White had diabetes and was hospitalized on several occasions during the last two or three years of his life, he was not bedfast nor was he confined to the home. He continued to have a garden and was up and about all of the time.

No evidence of an express contract was ever offered at the hearing and claimant relied on an implied contract. The executor contends that a "family" relationship existed between decedent and claimant, that therefore the services are presumed to be rendered without any recompense other than incidents of a family relationship.

■■ The general rule is that where persons live together as members of one family, a promise to pay for services of one to another is not implied from the mere rendition of the services; on the contrary, where nothing more appears than the rendition of such services, it is generally held that the services are presumed to be gratuitous. (*Meyer v. Meyer,* 379 Ill. 97.) This is also undeniably true where the relationship of the parties is sufficient to raise the presumption that they live together as a matter of mutual convenience. Annotation: 7 A.L.R.2d 8.

■■ The family relationship which gives rise to the presumption need not necessarily be one of blood kindred. The rule rests upon the idea of the mutual dependence of those who are members of one immediate family, and such a family may exist although composed of remote relations, and even of persons between whom there is no tie of blood or affinity. (66 Am.Jur.2d, Restitution and Implied Contracts, sec. 32; *Dunlap v. Allen,* 90 Ill. 108; *Collar v. Patterson,* 137 Ill. 403; *Heffron v. Brown,* 155 Ill. 322.) In *Collar v. Patterson* (page 407) the Supreme Court said, "The circumstances under which she went to live with the deceased, her relationship to his wife, and the fact that she continued to live in his family for so many years without any payment or settlement therefore, raises such a presumption that she lived there as a member of his family, that she can only recover by showing an express contract for wages or proving such circumstances as reasonably imply such contract."

"Such circumstances as reasonably imply such a contract" must show that the services were rendered upon the expectation of receiving pay therefore on the one side, and under the expectation of paying therefor on the other side, all at the time services were rendered. *Ginders v. Ginders,* 21 Ill.App. 522, 524; *Heffron v. Brown, supra,* at 326; *In re Estate of Foster,* 46 Ill.App.2d 319, 330.

There are many factors which will rebut or corroborate the presumption of gratuity. (66 Am.Jur.2d, Restitution and Implied Contracts, secs. 36—45; 7 A.L.R. 2d 8, secs. 8—13.) Among those are:

1. Express contract.
2. Oral promise to leave property by will or an invalid or ineffective agreement or instrument showing intention to pay.
3. Facts or circumstances which in their nature, justify an inference of an actual understanding of the parties; (The presumption of gratuitous service diminishes in direct proportion to the remoteness of the degree and character of family relationship and the character of the duties performed).
   a. Circumstances of the case, like the origin of the services, may be so exceptional as to rebut or repel the presumption. *Neish v. Gannon,* 198 Ill. 219,
   b. Failure or inability to make return either in kind or otherwise for there ordinarily must be reciprocity in services,
   c. Estate of decedent is enhanced by the work performed,
   d. Recipient of the services in question charged for services rendered by him (*Sherman v. Whiteside,* 190 Ill. 576),
   e. Services beyond an express agreement,
   f. Extraordinary services certainly not incident to any normal

domestic relationship, *McConathy v. McConathy*, 314 Ill.App. 377 (abstract) such as exceptionally burdensome or menial services,

g. Financial condition of the parties.

What the proof in the instant case does not show is, (1) that claimant expected to be paid for her services at the time services were rendered, and (2) that E. E. White, at the time the services were accepted by him, had any expectation of paying claimant therefore. *In re Estate of Foster, supra.*

■■ There is no evidence that claimant ever made any claim to E. E. White that he was indebted to her in any sum. There is no evidence that she ever submitted a bill or asked for any pay. There were no unusual or extraordinary services. There is an entire absence of proof in this case—nothing whatever tending to show that during the time claimant lived with the deceased either party understood that there was any legal liability on his part to pay for her services. On the contrary, all the facts and circumstances offered in evidence by her tend to show the absence of such an understanding.

Claimant has cited *Heffron v. Brown, supra.* In that case defendant's sister had died, plaintiff, a cousin of defendant, *gave up her employment as a domestic* in response to a telegram from defendant and came to Chicago to take charge of defendant's feeble mother and his house. The court on page 332 said, "The implied promise thus raised by the law is rebutted, where there is shown such a relation between the parties, as to exclude the inference that they were dealing on the footing of contract. * * * The facts and circumstances must be such as to show, that, at the time the services were rendered, the one expected to receive payment and the other to make payment." The facts of that case would justify an inference of an actual understanding to make payment.

Other cases cited by claimant either show no departure from the usual or are not applicable on the facts.

In *Floyd v. Estate of Smith*, 320 Ill.App. 171, 174 the court said, "the evidence is quite clear and distinct that *he promised her* if she would take care of him during his lifetime he would take care of her, * * *" and on page 176, "There is nothing in this evidence that when fairly considered, would permit us to conclude therefrom that Mr. Smith did not intend to pay and the claimant, on the other hand, did not expect to receive pay." It is obvious that the court recognized the general rule.

In *re Estate of McWain*, 77 Ill.App.2d 359, has no application to the facts herein. "The claimant, * * * at all relevant times, lived with her husband in her own home." (The decedent had lived in another town.)

*In re Estate of Dal Paos,* 118 Ill.App.2d 235 is not applicable because in that case the parties lived together in the same household under *an express* agreement to share expenses equally. "Their continued residence together was pursuant to this agreement." The court, on page 240, recognized the rule and said, "However, assuming that such a family relationship did exist, we believe there is sufficient evidence in the record to rebut the presumption. * * * The record shows that *decedent made repeated promises* to claimant that if she cared for him he would pay for those services, * * *."

In *In re Estate of Foster,* 46 Ill.App.2d 319, previously cited, the court recognized the rule and reversed the judgment rendered by the trial court in favor of claimant, a non-relative who resided with decedent.

*In re Estate of Likes,* 6 Ill.App.3d 976, has no application on the facts since claimant did not reside in decedent's home; further, her judgment was reversed.

*In re Estate of Brumshagen,* 27 Ill.App.2d 14, again has no application on the facts since claimant was *not a member of decedent's household.*

*In re Estate of Mallas,* 100 Ill.App.2d 88, again has no application on the facts since claimant was *not a member of decedent's household.*

*McRoberts v. Estate of Kennelly,* 52 Ill.App.2d 34, has no application on the facts. Claimant was not a member of decedent's household and, in fact, his own evidence showed that his services were rendered without expectation of payment and the court allowed him nothing.

*Moreen v. Estate of Carlson,* 365 Ill. 482, has no application since claimant resided with her mother 5 or 6 miles from the decedent's residence.

In view of our holding other issues raised need not be discussed. The judgment of the trial court will be reversed.

Judgment reversed.

ALLOY, P. J., and STOUDER, J., concur.