*In re* ESTATE OF CLARENCE F. CLAUSEN, Deceased.—(JAMES McGRATH, Ex'r of the Estate of Clarence F. Clausen, Objector-Appellant, *v.* ELINA NIELSENA CLAUSEN, Claimant-Appellee.)

Third District · No. 76-413

Opinion filed August 10, 1977.

Robert S. Grim, of Clinton & Tongren, of Peotone, for appellant.

Philip A. Troha and George Troha, both of Joliet, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

The executor of decedent's estate appeals from a judgment of the Circuit Court of Will County allowing a claim for services in the amount of $18,420 in favor of decedent's sister.

A review of the evidence is necessary.

Clarence Clausen died in 1973 after many years of poor health. His sister Elina Nielsena Clausen moved in with him and her father after her divorce in 1939 and kept house for both her father and brother. After her father died she stayed and took care of Clarence. Claimant's married name was Deerwood, but the decedent did not like the Deerwood name and had the claimant resume her maiden name. In his last years she also gave him medicine, cleaned up his frequent involuntary bowel movements, did laundry and prepared all meals. The relationship between the claimant and decedent was anything but a normal brother-sister relationship as the evidence reveals. A neighbor, Jerome Delaney, testified to the relationship as one of the "king and slave." Myrtle Prang

testified that the relationship was akin to Mrs. Clausen being a "puppy dog" and Mr. Clausen the master.

There was no evidence that decedent compensated claimant in any manner or even bought her clothes, except that he provided her food, shelter and medical expenses. Apparently decedent cashed claimant's monthly welfare or social security checks, and some evidence was presented that she deeded him her one-half interest in the family home and farm where claimant and decedent lived. Decedent's will placed most of his property in trust, with claimant to have the income for life and at her death the principle to go to a charitable home. The trustee was granted power to invade the trust corpus for claimant's needs.

The day after decedent's death claimant suffered a stroke and could not speak, but shortly before the stroke, the claimant's last words about her deceased brother were, "he will never tell me to shut up again." At the instigation of her daughter, claimant filed a claim against the estate which was later amended and increased to $36,000 for 24-hour-a-day services to decedent for the past five years. At the bench trial, several disinterested witnesses testified to the burdensome services provided to decedent by claimant, to the master-servant relationship of the parties, and to decedent's irascibility. One witness stated that decedent had never promised to pay claimant but that he said "she would have to be taken care of." In addition, claimant's daughter testified that decedent told her many times, in the claimant's presence, that she would get paid well for the work she did.

The executor originally contended that it was error to permit claimant's daughter to testify because she was directly interested in the litigation.

Section 2 of the Evidence Act (Ill. Rev. Stat. 1975, ch. 51, par. 2) provides:

> "In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party or person directly interested in the action shall be allowed to testify on his own behalf to any conversation with the deceased or incompetent person or to any event which took place in the presence of the deceased or incompetent person * * *."

According to this argument, the daughter is interested because the claim would be the only asset for her to inherit from her mother.

■■ Claimant answers that a witness is disqualified only if the interest is certain, direct and immediate (*Ackman v. Potter* (1909), 239 Ill. 578, 88 N.E. 231), and prospective heirs of parties to the proceedings do not have such an interest as to disqualify them as a witness. (*In re Estate of Franke* (1st Dist. 1970), 124 Ill. App. 2d 24, 259 N.E.2d 841.) The daughter's contingent interest here would go to the question of her credibility, not to her competency. During oral argument of this cause, counsel for

appellant correctly conceded that the daughter was a competent witness and that her contingent interest would only affect her credibility.

■■ Consequently, the remaining issue is whether the claim was established by a preponderance of the evidence. Our courts have had frequent occasions to consider claims for services against decedent's estates. A claim against an estate for services rendered to the decedent can be established by evidence of either an express or implied contract or obligation with the burden of proof on the claimant. Some courts have said that the law will imply liability for services where there was no reason for them to have been gratuitous (*e.g., Floyd v. Smith* (4th Dist. 1943), 320 Ill. App. 171, 50 N.E.2d 254), while others have looked for an employer-employee relationship or evidence of the details of an agreement for compensation. *In re Estate of Likes* (4th Dist. 1972), 6 Ill. App. 3d 976, 286 N.E.2d 65.

■■ The important fact here is that claimant and decedent were brother and sister and lived together as a family with mutual dependence. In such a case a presumption arises that the services rendered were intended to be gratuitous. (*In re Estate of Foster* (5th Dist. 1964), 46 Ill. App. 2d 319, 263 N.E.2d 45.) To rebut that presumption, there must be a showing that decedent expected to pay for the services and that claimant expected to be paid.

■■ In *Neish v. Gannon* (1902), 198 Ill. 219, 64 N.E. 1000, where a niece 15 years of age went to live with her aunt, at the aunt's request, the family relation was held not to prevent the implication of a promise to pay for services requested. In *In re Estate of Lyons* (1st Dist. 1940), 303 Ill. App. 642, 25 N.E.2d 555, expressions of decedent that "he did not know how he could get along without his sister-in-law keeping house for him," and that he was "really going to take care of her later on," were considered sufficient to rebut the presumption that services performed by a relative were intended to be gratuitous. It was further held that a provision for the claimant in decedent's will did not militate against her claim.

In the case of *In re Estate of White* (3d Dist. 1973), 15 Ill. App. 3d 200, 303 N.E.2d 569, this court discussed various factors which may rebut the presumption of gratuity. Among those applicable here are (1) decedent's estate was enhanced because he received claimant's welfare checks and avoided the expense of a nursing home; (2) claimant performed extraordinary services which were exceptionally burdensome; (3) decedent said he would pay claimant well; (4) claimant had no assets.

We believe the evidence is clear that Clarence Clausen did not intend the services to go unrewarded, nor can we find any evidence that the services were to be given gratuitously. The mere fact that there was no certain agreement as to what was to be paid for the services, or the time

of payment, would not prevent the implication of a promise to pay for services requested and faithfully performed. Under the facts and circumstances and the record as presented in this case we cannot conclude that the finding of the trial court was contrary to the manifest weight of the evidence.

The judgment of the Circuit Court of Will County will, therefore, be affirmed.

Affirmed.

ALLOY and SCOTT, JJ., concur.